# 13-3968-CR

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

➤➤ ◄◄

UNITED STATES OF AMERICA,

*Appellee,*

*v.*

ALEXIS AZCONA, AKA SEALED DEFENDANT 1, ANGELO FERNANDEZ,
AKA SEALED DEFENDANT 2, AKA SCARFACE, HECTOR MELENDEZ,
AKA SEALED DEFENDANT 3, JEFFREY MINAYA, AKA SEALED DEFENDANT 4,
AKA GAGO, ELSIO RIVERA, AKA SEALED DEFENDANT 6, AKA FIZZ,

*Defendants,*

*and*

DANIEL MONTANEZ, AKA SEALED DEFENDANT 5,

*Defendant-Appellant.*

————————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## JOINT APPENDIX

MICHAEL ALEXANDER LEVY,
DAMIAN WILLIAMS,
  ASSISTANT UNITED STATES ATTORNEYS
UNITED STATES ATTORNEY'S OFFICE,
  SOUTHERN DISTRICT OF NEW YORK
*Attorneys for Appellee*
1 St. Andrew's Plaza
New York, New York 10007
212-637-2346

LAW OFFICES OF RANDALL D. UNGER
*Attorneys for Defendant-Appellant*
42-40 Bell Boulevard, Suite 302
Bayside, New York 11361
718-279-4500

# **Table of Contents**

**Page**

District Court Docket Entries ................................................  A1

Sealed Indictment, dated January 11, 2013 ...........................  A11

Plea Agreement, dated June 19, 2013 ...................................  A16

Transcript of Change of Plea Proceedings held before the
      Honorable Paul Engelmeyer on July 2, 2013 .................  A23

Defendant's Sentencing Memorandum, dated December 3, 2013 ........  A44

        Exhibit A to Letter -
        (i) Memorandum on Department Policy on Charging
        Mandatory Minimum Sentences and Recidivist
        Enhancements in Certain Drug Cases,
        dated August 12, 2013 ............................................  A50
        (ii) Memorandum on Retroactive Application of
        Department Policy on Charging Mandatory Minimum
        Sentences and Recidivist Enhancements in Certain Drug
        Cases, dated August 29, 2013, with Attachments ...................  A53

        Exhibit B to Letter -
        Letter from Joel K. Peister to Daniel Montanez,
        dated January 29, 2013 ...........................................  A58

        Exhibit C to Letter -
        Letter from Daniel Montanez to the
        Honorable Paul Engelmayer, with Attachment .......................  A59

        Exhibit D to Letter -
        Various Correspondence, with Attachments ...........................  A63

Government's Sentencing Memorandum, dated December 12, 2013....  A74

Transcript of Sentencing Proceedings held before the
      Honorable Paul Engelmayer on December 19, 2013 ....................  A83

**<u>Table of Contents</u>**
**(Continued)**

**<u>Page</u>**

Judgment of the United States District Court of the Southern
    District of New York, entered December 19, 2013 ....................... A114

Notice of Appeal, dated December 30, 2013 ....................................... A120

A1

APPEAL, ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CRIMINAL DOCKET FOR CASE #: 1:13-cr-00020-PAE-5

Case title: USA v. Azcona et al

Date Filed: 01/11/2013
Date Terminated: 12/19/2013

Assigned to: Judge Paul A. Engelmayer

**Defendant (5)**

**Daniel Montanez**
*TERMINATED: 12/19/2013*
*also known as*
Sealed Defendant 5
*TERMINATED: 12/19/2013*

represented by **Gerald J Di Chiara**
Gerald J. Di Chiara, Esq.
404 Park Avenue South
New York, NY 10016
(212) 679-1958
Fax: (212) 689-3315
Email: JDiChiaraG@AOL.com
*ATTORNEY TO BE NOTICED*
Designation: CJA Appointment

**Gerald Dichiara**
3 Park Avenue
Suite 1501
New York, NY 10016
(212) 679-1958
*ATTORNEY TO BE NOTICED*

**Pending Counts**
21:846=ND.F CONSPIRACY TO
DISTRIBUTE NARCOTICS
(1)

**Disposition**
Imprisonment: 97 Months; Supervised
Release: 5 Years.

**Highest Offense Level (Opening)**
Felony

**Terminated Counts**
None

**Disposition**

**A2**

**Highest Offense Level (Terminated)**

None

**Complaints**                                          **Disposition**

None

---

**Plaintiff**

**USA**                          represented by  **A. Damian Williams**
                                                 U.S. Attorney's Office, SDNY (St Andw's)
                                                 One St. Andrew's Plaza
                                                 New York, NY 10007
                                                 (212)-637-2290
                                                 Email: damian.williams@usdoj.gov
                                                 *LEAD ATTORNEY*
                                                 *ATTORNEY TO BE NOTICED*

                                                 **Brooke Elizabeth Cucinella**
                                                 United States Attorney Office, SDNY
                                                 One Saint Andrew's Plaza
                                                 New York, NY 10007
                                                 (212)-637-2477
                                                 Fax: (212)-637-2443
                                                 Email: brooke.cucinella@usdoj.gov
                                                 *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/11/2013 | 2 | SEALED INDICTMENT as to Sealed Defendant 1 (1) count(s) 1, Sealed Defendant 2 (2) count(s) 1, 2, Sealed Defendant 3 (3) count(s) 1, Sealed Defendant 4 (4) count(s) 1, Sealed Defendant 5 (5) count(s) 1, Sealed Defendant 6 (6) count(s) 1. (jm) (Entered: 01/16/2013) |
| 01/15/2013 | 3 | Order to Unseal Indictment as to Sealed Defendant 1, Sealed Defendant 2, Sealed Defendant 3, Sealed Defendant 4, Sealed Defendant 5, Sealed Defendant 6. (Signed by Magistrate Judge Kevin Nathaniel Fox on 1/15/13)(jm) (Entered: 01/16/2013) |
| 01/15/2013 | | INDICTMENT UNSEALED as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera. (jm) (Entered: 01/16/2013) |
| 01/15/2013 | | Case Designated ECF as to Daniel Montanez, Elsio Rivera. (jm) (Entered: 01/16/2013) |
| 01/15/2013 | | Case as to Daniel Montanez, Elsio Rivera ASSIGNED to Judge Judge Paul A. Engelmayer. Judge Judge Unassigned no longer assigned to the case. (jm) (Entered: 01/16/2013) |

| 01/15/2013 | | Arrest of Daniel Montanez (5). [*** NOTE: Refer to Disposition Sheet for Rule 9 Proceeding held on 1/15/2013. ***] (bw) (Entered: 01/16/2013) |
|---|---|---|
| 01/15/2013 | | Minute Entry on "Disposition Sheet" for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Initial Appearance as to Daniel Montanez (5) held on 1/15/2013. Date of Arrest: 1/15/2013. AUSA Brooke Cucinella; Defense Counsel Gerald DiChiara (CJA) by Nick Pinto; Proceeding - Rule 9. BAIL DISPOSITION: Detention: Hearing scheduled for 1/22/2013 at 10:00 a.m. ADDITIONAL PROCEEDINGS: Defendant arraigned, pleads Not Guilty. Conference before District Judge on 1/17/2013 at 3:45 p.m. (bw) (Entered: 01/16/2013) |
| 01/15/2013 | | Minute Entry for proceedings held before Magistrate Judge Kevin Nathaniel Fox: Arraignment as to Daniel Montanez (5) Count 1 held on 1/15/2013. Plea entered by Daniel Montanez (5) Count 1 -- Not Guilty. (bw) (Entered: 01/16/2013) |
| 01/15/2013 | | ORAL ORDER as to Daniel Montanez (5). Detention Hearing set for 1/22/2013 at 10:00 AM before Magistrate Judge Kevin Nathaniel Fox. Pretrial Conference set for 1/17/2013 at 03:45 PM before Judge Paul A. Engelmayer. (By Magistrate Judge Kevin Nathaniel Fox on 1/15/2013) (bw) (Entered: 01/16/2013) |
| 01/15/2013 | 14 | CJA 23 Financial Affidavit by Daniel Montanez (5). (Signed by Magistrate Judge Kevin Nathaniel Fox on 1/15/2013); Attorney Gerald DiChiara. (bw) (Entered: 01/16/2013) |
| 01/15/2013 | | Attorney update in case as to Daniel Montanez (5). Attorney Gerald J. Di Chiara for Daniel Montanez added. (bw) (Entered: 01/16/2013) |
| 01/15/2013 | 23 | CJA 20 as to Daniel Montanez: Appointment of Attorney Gerald Dichiara for Daniel Montanez. (Signed by Magistrate Judge Kevin Nathaniel Fox on 1/15/13). The CJA office mailed the original to the attorney and sent a copy to the file.(sao) (Entered: 02/13/2013) |
| 01/17/2013 | 17 | NOTICE OF ATTORNEY APPEARANCE: Gerald J Di Chiara appearing for Daniel Montanez. Appearance Type: CJA Appointment. (Di Chiara, Gerald) (Entered: 01/17/2013) |
| 01/17/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Pretrial Conference as to Alexis Azcona, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera held on 1/17/2013. Defendant Alexis Azcona present with defense counsel Philip Weinstein present. Defendant Hector Melendez present with defense counsel Beth Farber present. Defendant Jeffrey Minaya present with defense counsel Carla Comisso, Esq. in for Elizabeth Macedonio. Defendant Daniel Montanez present with defense counsel Gerald Di Chiara present. Defendant Elsio Rivera present with defense counsel Jesse Siegel present. AUSAs Damian Williams and Brook Cucinella present. Court reporter present. Initial Pretrial Conference held. Next Pretrial conference scheduled for February 15, 2013 at 10:00 a.m. The Court excludes time from January 17, 2013 through February 15, 2013 under the Speedy Trial Act §3161(h) (7)(A) and for all the reasons stated on the record. Defendants remanded. (jbo) (Entered: 01/18/2013) |
| | | |

| 01/17/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: As to Alexis Azcona, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera. Pretrial Conference set for 2/15/2013 at 10:00 AM before Judge Paul A. Engelmayer. (jbo) (Entered: 01/18/2013) |
|---|---|---|
| 02/15/2013 | 24 | NOTICE OF ATTORNEY APPEARANCE A. Damian Williams appearing for USA. (Williams, A.) (Entered: 02/15/2013) |
| 02/15/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Pretrial Conference as to Alexis Azcona, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera held on 2/15/2013. Defendant Alexis Azcona present with defense counsel Philip L. Weinstein, Esq. present. Defendant Hector Melendez present with defense counsel Jesse M. Siegel, Esq. in for defense counsel Beth M. Farber, Esq. present. Defendant Jeffrey Minaya present with defense counsel Elizabeth E. Macedonio, Esq. present. Defendant Daniel Montanez present with defense counsel Gerald J. Di Chiara, Esq. present. Defendant Elsio Rivera present with defense counsel Jesse M. Siegel,Esq. present. AUSAs Brooke E. Cucinella and Damian Williams, Esqs. present. Court reporter present. Pretrial conference held. Next pretrial conference scheduled for March 15, 2013 at 12:00 p.m. The Court excludes time from February 15, 2013 through March 15, 2013 under the Speedy Trial Act §3161(h)(1) and (h)(7). Bail application for defendant Alexis Azcona to travel to and from New Jersey regarding employment and training. Counsel to submit an order for the Courts approval. Bail continued as to defendants Azcona, Melendez and Minaya. Defendants Montanez and Rivera continue remanded. (jbo) (Entered: 02/19/2013) |
| 02/15/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: As to Alexis Azcona, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera. Pretrial Conference set for 3/15/2013 at 12:00 PM before Judge Paul A. Engelmayer. (jbo) (Entered: 02/19/2013) |
| 03/15/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Pretrial Conference as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera held on 3/15/2013. Defendant Alexis Azcona present with defense counsel Philip Weinstein, Esq. present. Defendant Angelo Fernandez present with defense counsel Elizabeth Macedonio, Esq. in for Margaret Shalley, Esq. Defendant Hector Melendez present with defense counsel Beth Farber, Esq. present. Defendant Jeffrey Minaya present with defense counsel Elizabeth Macedonio, Esq. present. Defendant Daniel Montanez present with defense counsel Laura Di Chiara, Esq. in for Gerald J. Di Chiara, Esq. Defendant Elsio Rivera present with defense counsel Jesse Siegel, Esq. present. AUSA Damian Williams present. Court reporter present. Pretrial conference held. Next PTC April 12, 2013 at 11:30 a.m. The Court excludes time from March 15, 2013 through April 12, 2013 under the Speedy Trial Act §3161(h)(7)(A) and for all the reasons stated on the record. Bail continued as to defendants Alexis Azcona, Hector Melendez and Jeffrey Minaya. Defendants Angelo Fernandez, Daniel Montanez and Elsio Rivera continued remanded. (jbo) (Entered: 03/18/2013) |
| 04/10/2013 | 34 | ORDER as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, |

| | | |
|---|---|---|
| | | Daniel Montanez, Elsio Rivera. The conference in this case scheduled for April 12, 2013, is rescheduled from 11:30 a.m. to 9:30 a.m. that day. Any counsel who have an unavoidable conflict with this time are directed to contact the Court.SO ORDERED. (Signed by Judge Paul A. Engelmayer on 4/10/2013)(dnd) (Entered: 04/10/2013) |
| 04/12/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Pretrial Conference as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera held on 4/12/2013. For the Government: AUSA Damian Williams, Esq. AUSA Brooke Cucinella, Esq.. For Deft. Azcona : Philip L. Weinstein, Esq., For Deft. Fernandez: Margaret Shalley, Esq. and John Diaz, Esq., For Deft. Melendez: Beth M. Farber, Esq.,For Deft. Minaya: Elizabeth E. Macedonio, Esq., For Deft. Montanez: Gerald J. Di Chiara, Esq., For Deft. Rivera: Jesse M. Siegel, Esq., Court Reporter. Defendant Alexis Azcona present with defense counsel Philip Weinstein, Esq. present. Defendant Angelo Fernandez present with defense counsel Margaret Shalley and John Diaz, Esqs. present. Defendant Hector Melendez present defense counsel Beth Farber not present. Defendant Jeffrey Minaya present defense counsel Elizabeth Macedonio not present. Defendant Daniel Montanez present defense counsel Gerald Di Chiara not present. Defendant Elsio Riverapresent with defense counsel Jesse Siegel, Esq. present. Court reporter present. Pretrial conference held. Next conference scheduled for May 10, 2013 at 2:00 p.m. The Court excludes time from April 12, 2013 through May 10, 2013 under the Speedy Trial Act §3161(h)(7) (A)and for the reasons stated on the record. Bail continued as to defendants Alexis Azcona, Hector Melendez and Jeffrey Minaya. Defendants Angelo Fernandez, Daniel Montanez and ElsioRivera continued remanded. Engelmayer, J. (ajc) (Entered: 04/22/2013) |
| 04/12/2013 | | ORAL ORDER as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera: Time excluded from 4/12/2013 until 5/10/2013., As to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera( Pretrial Conference set for 5/10/2013 at 02:00 PM before Judge Paul A. Engelmayer.). (Signed by Judge Paul A. Engelmayer on 4/12/2013)(ajc) (Entered: 04/22/2013) |
| 05/10/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Pretrial Conference as to Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera held on 5/10/2013. Defendant Angelo Fernandez present with defense counsel Margaret Shalley and John Diaz, Esqs. present. Defendant Hector Melendez present with defense counsel Beth Farber, Esq. present. Defendant Jeffrey Minaya present with defense counsel Elizabeth Macedonio, Esq. present. Defendant Daniel Montanez present with defense counsel Gerald Di Chiara, Esq. present. Defendant Elsio Rivera present with defense counsel Jesse Siegel, Esq. present. AUSAs Damian Williams and Brooke Cucinella, Esqs. present. Court reporter present. Pretrial conference held. Defense counsel are to notify the court by May 24, 2013 if any motions will be filed and to their preference on the trial date. The Court scheduled trial dates for June 24, 2013 and July 22, 2013. Next pretrial conference scheduled for May 30, 2013 at 12:30 p.m. The Court excludes time from May 10, 2013 through May 30, |

| | | |
|---|---|---|
| | | 2013 under the Speedy Trial Act §3161(h)(7)(A) and for the reasons stated on the record. Defendants Angelo Fernandez, Daniel Montanez and Elsio Rivera continued remanded. Bail continues as to defendants Hector Melendez and Jeffrey Minaya. (jbo) (Entered: 05/13/2013) |
| 05/23/2013 | 38 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** DECLARATION of Gerald J. Di Chiara by Daniel Montanez. (Di Chiara, Gerald) Modified on 5/24/2013 (ka). (Entered: 05/23/2013) |
| 05/24/2013 | | **\*\*\*NOTE TO ATTORNEY THAT THE ATTEMPTED FILING OF Document No. 38 as to Defendant(s) Daniel Montanez HAS BEEN REJECTED. Note to Attorney Gerald J Di Chiara : Other than letters filed under a cover marked Sentencing Memorandum, THE CLERK'S OFFICE DOES NOT ACCEPT LETTERS FOR FILING either through ECF or otherwise, except where the judge has ordered that a particular letter be docketed. Letters may be sent directly to a judge. (ka) (Entered: 05/24/2013)** |
| 05/30/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer:Pretrial Conference as to Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera held on 5/30/2013. For the Government: AUSA Damian Williams, Esq., AUSA Brooke Cucinella, Esq. For Deft. Angelo Fernandez: Margaret Shalley, Esq. and John Diaz, Esq., Alan Seidler, Esq. (retained counsel). For Deft. Hector Melendez: Jesse M. Siegel, Esq. in for Beth M. Farber, Esq. For Deft. Jeffrey Minaya: Elizabeth E. Macedonio, Esq. For Deft. Daniel Montanez: Gerald J. Di Chiara, Esq. For Deft. Elsio Rivera: Jesse M. Siegel, Esq. Court Reporter: Steve Greenblum. Defendant Angelo Fernandez present with defense counsel Margaret Shalley and John Diaz, Esqs. present, also present was retained counsel Alan Seidler, Esq. for the defendant. Defendant Hector Melendez present, defense counsel Beth Farber, Esq. not present, defense counsel Jesse M. Siegel, Esq. in for attorney Beth Farber. Defendant Jeffrey Minaya present with defense counsel Elizabeth E. Macedonio, Esq. present. Defendant Daniel Montanez present with defense counsel Gerald J. Di Chiara, Esq. present. Defendant Elsio Rivera present with defense counselJesse M. Seigel, Esq. present. AUSAs Damian Williams and Brooke Cucinella, Esqs. present. Court reporter present. Pretrial conference held. Defendant Jeffrey Minaya plea scheduled for June 5, 2013 at 2:00 p.m. Defendant Elsio Rivera trial scheduled for June 24, 2013. Voir dire and request to charge due June 17, 2013. The Court excludes time from May 30, 2013 through June 24, 2013 (for defendants Jeffrey Minaya and Elsio Rivera) under the Speedy Trial Act §3161(h)(7)(A) and for the reasons stated on the record. Defendants Angelo Fernandez, Hector Melendez and Daniel Montanez trial scheduled for July 22, 2013. Any motions by defendants are due June 24, 2013. Voir dire and request to charge due July 15, 2013. Final pretrial conference scheduled for July 16, 2013 at 11:15 a.m. The Court excludes time from May 30, 2013 through July 22, 2013 (for defendants Angelo Fernandez, Hector Melendez and DanielMontanez) under the Speedy Trial Act §3161(h)(7)(A) and for the reasons stated on the record. Defendants Angelo Fernandez, Daniel Montanez and Elsio Rivera continued remanded. Bail continued as to defendants Hector Melendez and Jeffrey Minaya. Engelmayer, J. (ajc) (Entered: 05/31/2013) |

| 05/30/2013 | | ORAL ORDER as to Angelo Fernandez, Hector Melendez, Daniel Montanez: Time excluded from 5/30/2013 until 7/22/2013. As to Angelo Fernandez, Hector Melendez, Daniel Montanez( Motions due by 6/24/2013. Jury Trial set for 7/22/2013 at 03:00 AM before Judge Paul A. Engelmayer. Pretrial Conference set for 7/16/2013 at 11:15 AM before Judge Paul A. Engelmayer. Voir Dire set for 7/15/2013 at 03:00AM before Judge Paul A. Engelmayer.) (Signed by Judge Paul A. Engelmayer on 5/30/2013)(ajc) (Entered: 05/31/2013) |
| 06/24/2013 | 46 | ORDER as to (13-Cr-20-05) Daniel Montanez. On June 18,2013, the Court received a letter from defendant Daniel Montanez, dated June 10,2013. A copy of the letter is being furnished to Gerald DiChiara, Esq., counsel for Mr. Montanez, although the letter indicates that a copy was already sent to Mr. DiChiara. The original will be filed under seal. In pertinent substance, the letter comments on the attorney-client relationship. Mr. DiChiara is directed to review the letter and submit a brief response to the Court, copied to his client and the Government, by noon on June 26, 2013. To the extent Mr. DiChiara's response addresses the attorney-client relationship, he is authorized to redact that portion in the copy sent to the Government. The Court will hold a conference on June 27, 2013, at 9:00 a.m. to address the issues raised by Mr. Montanez. Counsel for the other defendants in this case need not attend, as this issue relates solely to the representation of Mr. Montanez. (Signed by Judge Paul A. Engelmayer on 6/24/2013) (bw) (Entered: 06/24/2013) |
| 06/25/2013 | 47 | SEALED DOCUMENT placed in vault. (mps) (Entered: 06/25/2013) |
| 06/25/2013 | 48 | NOTICE OF ATTORNEY APPEARANCE Brooke Elizabeth Cucinella appearing for USA. (Cucinella, Brooke) (Entered: 06/25/2013) |
| 06/27/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Pretrial Conference as to Daniel Montanez held on 6/27/2013. Defendant Daniel Montanez present with defense counsel Gerald Di Chiara, Esq. present. AUSA Brooke Cucinella, Esq. present. Court reporter present. Pretrial conference held. Defendant remanded. (jbo) (Entered: 06/27/2013) |
| 07/02/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Change of Plea Hearing as to Daniel Montanez held on 7/2/2013. Plea entered by Daniel Montanez (5) Guilty as to Count 1. Defendant Daniel Montanez present with defense counsel Gerald J. Di Chiara, Esq. present. AUSA Brooke Cucinella, Esq. present. Court reporter present. Defendant sworn. Defendant withdraws his previously entered plea of not guilty and now pleads guilty to Count One. PSI ordered. Sentence date October 4, 2013 at 3:00 p.m. Defendant remanded. (jbo) (Entered: 07/02/2013) |
| 07/02/2013 | | Change of Not Guilty Plea to Guilty Plea as to Daniel Montanez (5) Count 1. (jbo) (Entered: 07/02/2013) |
| 07/02/2013 | | Order of Referral to Probation for Presentence Investigation and Report as to Daniel Montanez (Signed by Judge Paul A. Engelmayer on 10/4/13)(jbo) (Entered: 07/02/2013) |
| | | |

| 07/26/2013 | 58 | MOTION in Limine. Document filed by USA as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera. (Attachments: # 1 Exhibit)(Williams, A.) (Entered: 07/26/2013) |
|---|---|---|
| 08/01/2013 | 62 | TRANSCRIPT of Proceedings as to Daniel Montanez re: Plea held on 7/2/13 before Judge Paul A. Engelmayer. Court Reporter/Transcriber: Jerry Harrison, (212) 805-0300, Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 8/26/2013. Redacted Transcript Deadline set for 9/6/2013. Release of Transcript Restriction set for 11/4/2013. (Rodriguez, Somari) (Entered: 08/01/2013) |
| 08/01/2013 | 63 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT as to Daniel Montanez. Notice is hereby given that an official transcript of a Plea proceeding held on 7/2/13 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days.... (Rodriguez, Somari) (Entered: 08/01/2013) |
| 08/05/2013 | 64 | PROPOSED EXAMINATION OF JURORS by USA as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera. (Williams, A.) (Entered: 08/05/2013) |
| 08/05/2013 | 65 | Request To Charge by USA as to Alexis Azcona, Angelo Fernandez, Hector Melendez, Jeffrey Minaya, Daniel Montanez, Elsio Rivera. (Williams, A.) (Entered: 08/05/2013) |
| 09/18/2013 | 94 | ENDORSED LETTER as to Daniel Montanez addressed to Judge Paul A. Engelmayer from Gerald J. Di Chiara dated 9/18/2013 re: Counsel for the defendant writes to request the sentencing scheduled for October 4, 2013 be adjourned to November 13, 2013 at 11:00 a.m. ENDORSEMENT: Granted. Sentencing is rescheduled to November 13, 2013 at 11:00 a.m. SO ORDERED. (Signed by Judge Paul A. Engelmayer on 9/18/2013)(dnd) (Entered: 09/18/2013) |
| 11/04/2013 | 103 | LETTER MOTION addressed to Judge Paul A. Engelmayer from Gerald J. Di Chiara dated 10/31/13 re: Adjourn Sentence. Document filed by Daniel Montanez. (Di Chiara, Gerald) (Entered: 11/04/2013) |
| 11/05/2013 | 104 | MEMO ENDORSED granting 103 LETTER MOTION Reschedule Sentencing to December 19, 2013 at 10:00am as to Daniel Montanez (5)...ENDORSEMENT...Granted. (Signed by Judge Paul A. Engelmayer on 11/4/2013) (jw) (Entered: 11/05/2013) |
| 11/05/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer as to Daniel Montanez; Sentencing set for 12/19/2013 at 10:00 AM before Judge Paul A. Engelmayer. (jw) (Entered: 11/05/2013) |
| 12/05/2013 | 115 | SENTENCING SUBMISSION by Daniel Montanez. (Attachments: # 1 Exhibit, # 2 |

| | | Exhibit, # 3 Exhibit, # 4 Exhibit)(Di Chiara, Gerald) (Entered: 12/05/2013) |
|---|---|---|
| 12/12/2013 | 118 | SENTENCING SUBMISSION by USA as to Daniel Montanez. (Williams, A.) (Entered: 12/12/2013) |
| 12/18/2013 | 120 | SENTENCING SUBMISSION by Daniel Montanez. (Attachments: # 1 Exhibit)(Di Chiara, Gerald) (Entered: 12/18/2013) |
| 12/19/2013 | | Minute Entry for proceedings held before Judge Paul A. Engelmayer: Sentencing held on 12/19/2013 for Daniel Montanez (5) Count 1. Defendant Daniel Montanez present with defense counsel Gerald J. Di Chiara, Esq. present. AUSA Damian Williams, Esq. present. Court reporter present. Defendant sentenced to: Ninttyseven (97) months incarceration. Five (5) years supervised release with the standard conditions 1-13; mandatory conditions and special conditions as follows: 1. The defendant will participate in a program approved by the U.S. Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount to be determined by the probation officer, based on ability to pay or availability of the third-party payment. 2. The defendant shall participate in a program or course of study aimed at improving educational level or employment skills, for example, obtain a GED, participate in or complete avocational training program, or participate in a literacy program. 3. The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to asearch may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.4. The defendant is to report to the nearest Probation Office within 72 hours of release from custody. 5. The defendant shall be supervised in the district of his residence. No fine imposed. No restitution imposed. No forfeiture imposed. Special Assessment of $100.00 due immediately. The Court recommends to the BOP that the defendant be housed in a facility as near to the New York City metropolitan area to be close to family members. The Court also recommends that while the defendant is incarcerated, he participate in any available educational and vocational training programs, and if eligible, he participate in the Residential Drug Assistance Program (RDAP). Defendant remanded. Engelmayer, J. (ajc) (Entered: 12/19/2013) |
| 12/19/2013 | 121 | JUDGMENT as to Daniel Montanez (5), Count(s) 1, Imprisonment: 97 Months; Supervised Release: 5 Years. The court makes the following recommendations to the Bureau of Prisons: That the defendant be housed in a facility as near to the New York City metropolitan area to be close to family members. The Court also recommends that while the defendant is incarcerated, he participate in any available educational and vocational training programs, and if eligible, he participate in the Residential Drug Assistance Program (RDAP). The defendant is remanded to the custody of the United |

| | | States Marshal. The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. The defendant shall cooperate in the collection of DNA as directed by the probation officer. The defendant is to pay an assessment fee of $100.00 due immediately. (Signed by Judge Paul A. Engelmayer on 12/19/2013) (dnd) (Entered: 12/19/2013) |
|---|---|---|
| 12/30/2013 | 123 | NOTICE OF APPEAL by Daniel Montanez from 121 Judgment. (NOA filed by CJA appointed counsel on behalf of the defendant). (nd) (Entered: 12/30/2013) |
| 12/30/2013 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet as to Daniel Montanez to US Court of Appeals re: 123 Notice of Appeal - Final Judgment. (nd) (Entered: 12/30/2013) |
| 12/30/2013 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files as to Daniel Montanez re: 62 Transcript,, 17 Notice of Attorney Appearance - Defendant, 94 Endorsed Letter, Set Hearings,, 104 Order on Letter Motion, 63 Notice of Filing Transcript,, 34 Order, 38 Declaration, 48 Notice of Attorney Appearance - USA, 58 MOTION in Limine., 64 Proposed Examination of Jurors, 118 Sentencing Submission, 103 LETTER MOTION addressed to Judge Paul A. Engelmayer from Gerald J. Di Chiara dated 10/31/13 re: Adjourn Sentence., 24 Notice of Attorney Appearance - USA, 46 Order, Set Deadlines/Hearings,,,,,,, 121 Judgment,,, 3 Order to Unseal Indictment, 2 Indictment (Sealed), 65 Request to Charge, 115 Sentencing Submission, 123 Notice of Appeal - Final Judgment, 120 Sentencing Submission were transmitted to the U.S. Court of Appeals. (nd) (Entered: 12/30/2013) |
| 01/16/2014 | 125 | SEALED DOCUMENT placed in vault. (nm) (Entered: 01/16/2014) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/16/2014 17:18:13 | | |
| PACER Login: | ru0213 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:13-cr-00020-PAE |
| Billable Pages: | 8 | Cost: | 0.80 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

                                                    **SEALED**
        - v. -                              :   **INDICTMENT**

ALEXIS AZCONA,                        :   12 Cr.
ANGELO FERNANDEZ,
  a/k/a "Scarface,"                   :   **13 CRIM 020**
HECTOR MELENDEZ,
JEFFREY MINAYA,                     :
  a/k/a "Gago,"
  a/k/a "G,"                            :
DANIEL MONTANEZ,
  a/k/a "D," and                     :
ELSIO RIVERA,
  a/k/a "Fizz,"                         :
                Defendants.
                                                    :

- - - - - - - - - - - - - - - - - - - x



COUNT ONE

(Conspiracy to Distribute Narcotics)

        The Grand Jury charges:

        1.    From at least 2003 through in or about January

2013, in the Southern District of New York and elsewhere, ALEXIS

AZCONA, ANGELO FERNANDEZ, a/k/a "Scarface," HECTOR MELENDEZ,

JEFFREY MINAYA, a/k/a "Gago," a/k/a "G," DANIEL MONTANEZ, a/k/a

"D," and ELSIO RIVERA, a/k/a "Fizz," the defendants, and others

known and unknown, intentionally and knowingly did combine,

conspire, confederate, and agree together and with each other to

violate the narcotics laws of the United States.

        2.    It was a part and an object of the conspiracy

that ALEXIS AZCONA, ANGELO FERNANDEZ, a/k/a "Scarface," HECTOR

JUDGE ENGELMAYER

MELENDEZ, JEFFREY MINAYA, a/k/a "Gago," a/k/a "G," DANIEL
MONTANEZ, a/k/a "D," and ELSIO RIVERA, a/k/a "Fizz," the
defendants, and others known and unknown, would and did
distribute and possess with the intent to distribute controlled
substances, in violation of Title 21, United States Code,
Section 841(a)(1).

3.    The controlled substances involved in the offense
included (i) 280 grams and more of mixtures and substances
containing a detectable amount of cocaine base, in a form
commonly known as "crack," in violation of Title 21, United
States Code, Section 841(b)(1)(A); and (ii) less than 50
kilograms of marijuana, in violation of Title 21, United States
Code, Section 841(b)(1)(D).

(Title 21, United States Code, Section 846.)

### COUNT TWO

(Possession of a Firearm in Furtherance of a Drug Trafficking
Crime)

The Grand Jury further charges:

4.    On or about December 16, 2009, in the Southern
District of New York and elsewhere, ANGELO FERNANDEZ, a/k/a
"Scarface," the defendant, during and in relation to a drug
trafficking crime for which he may be prosecuted in a court of
the United States, namely, the offense charged in Count One of
this Indictment, knowingly did use and carry a firearm and, in

2

furtherance of such crime, did possess a firearm, which the defendant carried and possessed inside of 1360 Plimpton Avenue, Bronx, New York.

(Title 18, United States Code, Section 924(c)(1)(A)(i).)

### FORFEITURE ALLEGATION

5.    As a result of committing the offense charged in Count One of this Indictment, ALEXIS AZCONA, ANGELO FERNANDEZ, a/k/a "Scarface," HECTOR MELENDEZ, JEFFREY MINAYA, a/k/a "Gago," a/k/a "G," DANIEL MONTANEZ, a/k/a "D," and ELSIO RIVERA, a/k/a "Fizz," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the offense and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense charged in Count One of this Indictment.

### Substitute Assets Provision

6.    If any of the above-described forfeitable property, as a result of any act or omission of ALEXIS AZCONA, ANGELO FERNANDEZ, a/k/a "Scarface," HECTOR MELENDEZ, JEFFREY MINAYA, a/k/a "Gago," a/k/a "G," DANIEL MONTANEZ, a/k/a "D," and ELSIO RIVERA, a/k/a "Fizz," the defendants:

    a.    cannot be located upon the exercise of due diligence;

3

    b.  has been transferred or sold to, or
        deposited with, a third person;

    c.  has been placed beyond the jurisdiction of
        the Court;

    d.  has been substantially diminished in value;
        or

    e.  has been commingled with other property
        which cannot be subdivided without
        difficulty,

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

        (Title 21, United States Code, Section 853.)


_____ 1/11/13
FOREPERSON

_____
PREET BHARARA
United States Attorney

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ALEXIS AZCONA,
ANGELO FERNANDEZ,
a/k/a "Scarface,"
HECTOR MELENDEZ,
JEFFREY MINAYA,
a/k/a "Gago,"
a/k/a "G,"
DANIEL MONTANEZ,
a/k/a "D," and
ELSIO RIVERA,
a/k/a "Fizz,"

Defendants.

SEALED
INDICTMENT

12 Cr.

(21 U.S.C. §§ 846, 853;
18 U.S.C § 924(c)(1)(A)(i). )

PREET BHARARA
United States Attorney.

A TRUE BILL

1/11/13

Foreperson.

1/11/13   Fld. Indictment under seal, A/W's issued

Pitman, USMJ
BR

**A16**



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

Final

June 19, 2013

**BY E-Mail**
Gerald J. DiChiara, Esq.
404 Park Avenue South, 16th Floor
New York, NY 10016

             **Re:**    <u>United States</u> v. <u>Daniel Montanez</u>, 13 Cr. 020 (PAE)

Dear Mr. DiChiara:

        On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Daniel Montanez ("the defendant") to Count One of the above-referenced Indictment.

        Count One of the Indictment charges the defendant with conspiring, from at least 2003 through in or about January 2013, to distribute and possess with the intent to distribute (1) 280 grams and more of mixtures and substances containing cocaine base and (2) less than 50 kilograms of marijuana, in violation of 21 United States Code, Sections 846, 841(b)(1)(A), and 841(b)(1)(D).[1] Under the terms of this agreement, however, the Government will accept a guilty plea to the lesser-included offense of conspiracy to distribute and possess with the intent to distribute 28 grams and more of a mixture or substance which contains cocaine base, from at least 2003 through in or about January 2013, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B).

        As a result, Count One carries a maximum term of 40 years' imprisonment; a mandatory minimum term of imprisonment of 5 years; a maximum fine of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; a $100 special assessment; a maximum lifetime term of supervised release; and a mandatory minimum term of 4 years' supervised release.

        In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations as to which this

---

      [1]     Pursuant to this agreement, the parties have agreed that the defendant will plead guilty only to the crack distribution object of Count One.

06.06.2011

Office cannot, and does not, make any agreement) for conspiring to distribute and possess with the intent to distribute cocaine base, from at least 2003 through in or about January 2013, as alleged in Count One of the Indictment. In addition, at the time of sentencing, the Government will move to dismiss any open Counts against the defendant. The defendant agrees that with respect to any and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant hereby admits the forfeiture allegation with respect to Count One of the Indictment and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853, all property real and personal, constituting or derived from any proceeds the defendant obtained directly and indirectly as a result of the offense and any and all property used and intended to be used in any manner and part to commit and to facilitate the commission of the offense alleged in Count One of the Indictment. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A.    Offense Level

1.    The base offense level for Count One is 32, pursuant to U.S.S.G. § 2D1.1(c)(4), because the defendant conspired to distribute and possess with the intent to distribute at least 280 grams but less than 840 grams of cocaine base.[2]

2.    Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 29.

---

[2]    The parties agree that consideration pursuant to U.S.S.G. § 3B1.1 of the quantity of marijuana distributed by the defendant in a poly drug analysis would not be sufficient to increase the applicable offense level.

B.     Criminal History Category

Based upon the information now available to this Office, the defendant has three criminal history points, calculated as follows:

1.     On or about October 15, 2004, the defendant was convicted in Bronx County Criminal Court of Criminal Possession of Marijuana, in violation of Section 221.10 of the New York Penal Law. The defendant was sentenced to time served. Pursuant to U.S.S.G. § 4A1.2(c), this sentence results in zero criminal history points because this conviction involves conduct relevant to the instant offense.

2.     On or about June 28, 2007, the defendant was convicted in Bronx County Criminal Court of Criminal Use of Drug Paraphernalia, in violation of Section 220.50 of the New York Penal Law. The defendant was sentenced to conditional discharge. Pursuant to U.S.S.G. § 4A1.2(a)(1), this sentence results in zero criminal history points because this conviction involves conduct relevant to the instant offense.

3.     On or about October 24, 2008, the defendant was convicted in Bronx County Criminal Court of Criminal Sale of Marijuana, in violation of Subsection 221.40 of the New York Penal Law. The defendant was sentenced to conditional discharge. Pursuant to U.S.S.G. § 4A1.2(a)(1), this sentence results in zero criminal history points because this conviction involves conduct relevant to the instant offense.

4.     On or about July 9, 2009, the defendant was convicted in New York State Supreme Court, Bronx County, of Assault in the Second Degree, in violation of Section 120.05, subsection 2 of the New York Penal Law. The defendant was sentenced to a 5 years' probation. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in one criminal history point.

5.     On or about March 2, 2011, the defendant was convicted in New York State Supreme Court, Bronx County, of Unlawful Possession of Marijuana, in violation of Section 221.05 of the New York Penal Law. The defendant was sentenced to a $150 fine. Pursuant to U.S.S.G. § 4A1.2(c), this sentence results in zero criminal history points because this conviction involves conduct relevant to the instant offense.

6.     Pursuant to U.S.S.G. § 4A1.2(d), two criminal history points are added because the defendant committed the instant offense while under a criminal justice sentence of probation.

In accordance with the foregoing, the defendant's Criminal History Category is II.

C.    Sentencing Range

Based upon the calculations set forth above, the defendant's sentencing Guidelines range is 97 to 121 months' imprisonment, with a mandatory minimum term of imprisonment of 60 months' imprisonment (the "Stipulated Guidelines Range"). In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines offense level 29, the applicable Guidelines fine range is $15,000 to $150,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party suggest that the Probation Office consider such a departure or adjustment under the Guidelines, or suggest that the Court *sua sponte* consider any such departure or adjustment.

The parties agree not to seek a sentence outside of the Stipulated Guidelines Range, suggest that the Probation Office consider a sentence outside of the Stipulated Guidelines Range, or suggest that the Court *sua sponte* consider a sentence outside of the Stipulated Guidelines Range.

Except as provided in any written Proffer Agreement that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range of 97 to 121 months' imprisonment (or such other range as the Court may determine) the defendant should be sentenced; (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's Criminal History Category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations

A20

different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 97 to 121 months' imprisonment and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $15,000, and the Government agrees not to appeal any fine that is greater than or equal to $150,000.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act material, exculpatory material pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, and impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this

06.06.2011                                           5

Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

PREET BHARARA
United States Attorney

By:

Damian Williams // Brooke E. Cucinella
Assistant United States Attorneys
(212) 637-2298 // 2477

APPROVED:

Jeffrey Brown
Chief, General Crimes

AGREED AND CONSENTED TO:

_____          _____
Daniel Montanez                          DATE

APPROVED:

_____          _____
Gerald J. DiChiara, Esq.                 DATE
Attorney for Daniel Montanez

06.06.2011                               7

1

Plea

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        13 Cr. 20 PAE

5   DANIEL MONTANEZ,

6              Defendant.

7   ------------------------------x

8

9                                       July 2, 2013
                                        12:30 p.m.
10

11

12  Before:

13              HON. PAUL A. ENGELMAYER,

14                                      District Judge

15

16                  APPEARANCES

17

18  PREET BHARARA,
        United States Attorney for the
19      Southern District of New York
    BROOKE CUCINELLA,
20      Assistant United States Attorney

21

22  GERALD J. Di CHIARA,
        Attorney for defendant Montanez
23

24

25
```

Plea

1         (In open court)

2         (Case called)

3         THE COURT:  Mr. Di Chiara, I understand your client

4  wishes to plead guilty to Count 1 of the indictment in this

5  case.  Is that correct?

6         MR. Di CHIARA:  That's correct, your Honor.  There is

7  actually a lesser included aspect of Count 1 that he is

8  pleading guilty to.

9         THE COURT:  Yes, I understood that point.

10         Mr. Montanez, am I correct that it is correct you wish

11  to plead guilty to Count 1 today?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Thanks.  Mr. Di Chiara, if you can move

14  the microphone close to your client.

15         Mr. Montanez, before accepting your guilty plea, I am

16  going to ask you certain questions so that I can establish to

17  my satisfaction that you wish to plead guilty because you are

18  guilty and not for some other reason.  If you don't understand

19  my questions or would like a further opportunity to speak with

20  your attorney, will you please let me know?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Are you able to speak and understand

23  English?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Ms. Hummel, please place the defendant

Plea

```
 1    under oath.

 2              (The defendant was duly sworn)

 3              THE COURT:  Mr. Montanez, do you now understand you're

 4    now under oath and if you answer any of my questions falsely,

 5    your answers to my questions may be used against you in another

 6    prosecution for perjury?

 7              THE DEFENDANT:  Yes.

 8              THE COURT:  What is your full name?

 9              THE DEFENDANT:  Daniel Montanez.

10              THE COURT:  How old are you?

11              THE DEFENDANT:  29.

12              THE COURT:  How far did you go in school?

13              THE DEFENDANT:  9th grade.

14              THE COURT:  Where was that?

15              THE DEFENDANT:  Freddy Smith in the Bronx.

16              THE COURT:  Have you ever been treated or hospitalized

17    for any mental illness?

18              THE DEFENDANT:  No.

19              THE COURT:  Are you now or have you recently been

20    under the care of a doctor or a psychiatrist?

21              THE DEFENDANT:  No.

22              THE COURT:  Have you ever been hospitalized or treated

23    for addiction to any drugs or to alcohol?

24              THE DEFENDANT:  I was in a program for marijuana.

25              THE COURT:  When was that?
```

**A26**

4

Plea

1              THE DEFENDANT:  2010 to 2011.

2              THE COURT:  Since then, have you been hospitalized or

3      treated for addiction to any drugs or alcohol?

4              THE DEFENDANT:  No.

5              THE COURT:  In the past 24 hours, have you taken any

6      drugs, medicine or pills or drunk any alcoholic beverages?

7              THE DEFENDANT:  No.

8              THE COURT:  Is your mind clear today?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Do you understand what is happening in

11     this proceeding?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Mr. Di Chiara, do you have any doubt as to

14     the defendant's competence to plead guilty.

15             MR. Di CHIARA:  No.

16             THE COURT:  How about you, Ms. Cucinella?

17             MS. CUCINELLA:  No.

18             THE COURT:  Based on the defendant's responses to my

19     questions, based on his demeanor as he appears before me, based

20     on counsel's independent assessment of the point, I find the

21     defendant is competent to enter a plea of guilty at this time.

22             Have you had a sufficient opportunity, Mr. Montanez,

23     to discuss your case with your attorney?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Have you had a sufficient opportunity to

Plea

1    discuss the charge to which you intend to plead guilty, any
2    possible defenses to that charge and the consequences of
3    entering into a plea of guilty?
4              THE DEFENDANT:  Yes.
5              THE COURT:  Are you satisfied with your attorney's
6    representation of you, including your attorney's efforts to
7    enter into a plea agreement with the government?
8              THE DEFENDANT:  Yes.
9              THE COURT:  I am going to explain certain
10   constitutional rights you have.  You will be giving up these
11   rights if you enter a plea of guilty.  Under the Constitution
12   and laws of the United States, you're entitled to a speedy and
13   public trial by a jury on the charges contained in the
14   indictment.  Do you understand that?
15             THE DEFENDANT:  Yes, sir.
16             THE COURT:  At that trial you would be presumed to be
17   innocent, and the government would be required to prove you
18   guilty by competent evidence and beyond a reasonable doubt
19   before you could be found guilty, you would not have to prove
20   that you were innocent, and a jury of twelve people would have
21   to agree unanimously that you were guilty.
22             Do you understand that?
23             THE DEFENDANT:  Yes.
24             THE COURT:  At that trial and at every stage of your
25   case, you would be entitled to be represented by an attorney,

6

Plea

1    and if you could not afford one, one would be appointed to

2    represent you free of charge.  Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  During a trial the witnesses for the

5    government would have to come to court and testify in your

6    presence, and your lawyer could cross-examine the witnesses for

7    the government, object to evidence offered by the government,

8    and if you desired, issue subpoenas, offer evidence and compel

9    witnesses to testify on your behalf.  Do you understand that?

10              THE DEFENDANT:  Yes.

11              THE COURT:  At a trial, although you'd have the right

12    to testify if you chose to do so, you would also have the right

13    not to testify, and no inference or suggestion of guilt could

14    be drawn from the fact that you did not testify, if that was

15    what you chose to do.  Do you understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  At trial the government would have to

18    prove each and every part or element of the charge beyond a

19    reasonable doubt for you to be convicted of that charge.  Do

20    you understand that?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Do you understand if you were convicted at

23    a trial, you would then have the right to appeal that verdict?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Even at this time, right now, even as you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A29**

Plea

1    are in the process of entering this plea, you have the right to

2    change your mind, plead not guilty and go trial.  Do you

3    understand that?

4             THE DEFENDANT:  Yes.

5             THE COURT:  If you plead guilty and I accept your

6    plea, you'll give up your right to a trial and all the other

7    rights that I have just described, there will be no trial, and

8    I will enter a judgment of guilty and sentence you on the basis

9    of your guilty plea after considering the submissions related

10   to sentencing I get from you, your lawyer, and the government

11   as well as the presentence report prepared by the Probation

12   Department.  Do you understand that?

13            THE DEFENDANT:  Yes.

14            THE COURT:  If you plead guilty, you'll also have to

15   give up your right not to incriminate yourself because I will

16   ask you questions about what you did in order to satisfy myself

17   that you are guilty as charged.  Do you understand that?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Mr. Montanez, have you received a copy of

20   the indictment containing the charge against you?

21            THE DEFENDANT:  Yes.

22            THE COURT:  Have you read it?

23            THE DEFENDANT:  Yes.

24            THE COURT:  Have you had a chance to discuss the

25   indictment with your attorney?

**A30**

8

Plea

1              THE DEFENDANT:  Yes.

2              THE COURT:  Do you understand you're charged in Count

3      1 with conspiring to violate the narcotics laws of the United

4      States?

5              THE DEFENDANT:  Yes.

6              THE COURT:  The law against narcotics conspiracy makes

7      it a crime to knowingly and willfully conspire or agree with

8      one or more other people to violate the narcotics laws of the

9      United States.

10             In this case, the specific narcotics laws you're

11     accused of conspiring to violate is the law against the

12     distribution and sale of narcotics; in particular, 28 grams and

13     more of a mixture or substance containing cocaine base.  Do you

14     understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that the maximum

17     possible term of imprisonment for that crime is 40 years

18     imprisonment?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Do you understand the mandatory-minimum

21     term of imprisonment the court could impose is five years?

22             THE DEFENDANT:  Yes.

23             THE COURT:  The maximum fine for this crime is the

24     greatest of $5 million, twice the gross pecuniary gain derived

25     from the offense or twice the gross pecuniary loss to other

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Plea

9

1    people.  Do you understand that?

2            THE DEFENDANT:  Yes.

3            THE COURT:  For pleading guilty to Count 1, you would

4    receive a mandatory term of supervised release.  The minimum

5    term of supervised release that the court could impose is four

6    years.  The maximum term of supervised release that the court

7    could impose is a lifetime term of supervised release.  Do you

8    understand that?

9            THE DEFENDANT:  Yes.

10            THE COURT:  "Supervised release" means that you will

11    be subject to monitoring when you are released from prison.

12    There are terms of supervised release with which you must

13    comply, and if you don't comply with them, you can be returned

14    to prison without a jury trial for all or part of the term of

15    supervised release imposed by the court.

16            Under those circumstances, you would not be given any

17    credit towards that term for the time you served in prison as a

18    result of your sentence for this crime, nor would you

19    necessarily be given any credit towards that term for any time

20    you had spent on most release supervision.

21            Do you understand that?

22            THE DEFENDANT:  Yes.

23            THE COURT:  For pleading guilty to this crime, you

24    will be required to pay a mandatory $100.00 special assessment.

25            Do you understand that?

10

Plea

1              THE DEFENDANT: Yes.

2              THE COURT: For pleading guilty to this crime, you may

3    be compelled to forfeit any and all property constituting and

4    derived from proceeds obtained by your criminal conduct. In

5    this case, you would be required to forfeit the gross proceeds

6    you received from your narcotics distribution activities as

7    charged in Count 1. Do you understand that?

8              THE DEFENDANT: Yes.

9              THE COURT: Do you also understand if I accept your

10   guilty plea and adjudge you guilty, that may deprive you of

11   valuable civil rights such as the right to vote, the right to

12   hold public office, the right to serve on a jury and the right

13   to possess any kind of firearm?

14             THE DEFENDANT: Yes.

15             THE COURT: Are you a United States Citizen?

16             THE DEFENDANT: Yes.

17             THE COURT: Under current law, there are sentencing

18   guidelines as well as other factors set forth in the sentencing

19   statutes that judges must consider in determining a sentence.

20             Do you understand that?

21             THE DEFENDANT: Yes.

22             THE COURT: Have you spoken with your attorney about

23   the sentencing guidelines and those other factors?

24             THE DEFENDANT: Yes, your Honor.

25             THE COURT: Do you understand that the court will not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11
Plea

1    be able to determine the guideline range that will form a part

2    of my determination of what a reasonable sentence is in your

3    case until after a presentence report has been prepared and

4    until after you and your attorney and the government have had

5    the chance to challenge any of the facts reported by the

6    probation officer?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that even though the

9    government has provided you with its current calculation of

10   your sentence under the guidelines in the plea agreement, that

11   range, which is between 97 and 121 months imprisonment and a

12   fine of between 15,000 and $150,000, is not binding on the

13   Probation Department and is not binding on the Court?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand that even after the

16   court has determined what guideline range applies to your case,

17   the court has the discretion under the current law to impose a

18   sentence that is higher or lower than the one suggested by the

19   guidelines except that the court must impose at least the

20   statutory mandatory minimum year of 60 months imprisonment?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand if your attorney or

23   anyone else has attempted to predict what your sentence could

24   be, their prediction could be wrong?

25             No one, not your attorney, not the government's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A34**

                                                                    12

Plea


 1    attorney, no one can give you any assurance of what your

 2    sentence will be because I'm going to decide your sentence, and

 3    I cannot do that now and I am not going to do that now.

 4    Instead, I am going to wait until I receive the presentence

 5    report prepared by the Probation Department.  I am going to do

 6    my own independent calculation of the guidelines.

 7             I am going to determine whether there is a basis

 8    within the guidelines for departing above or below the

 9    guideline range, but most of all, having done a thorough review

10    of the presentence report and the sentencing submissions I

11    receive from each side, I am going to determine what a

12    reasonable sentence is for you based on all the factors set

13    forth in the sentencing statute which is known as Section 3553

14    (a).  Do you understand all that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Have you discussed these issues with your

17    attorney?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Even if your sentence is different from

20    what your attorney or anyone else has told you it might be,

21    even if it is different from what you expect, even if it is

22    different from what is contained in your plea agreement with

23    the government, you would still be bound by your guilty plea

24    and you will not be allowed to withdraw your plea of guilty.

25             Do you understand that?

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

13

Plea

1          THE DEFENDANT:  Yes.

2          THE COURT:  Has anyone threatened you or anyone else

3    or forced you in any way to plead guilty?

4          THE DEFENDANT:  No.

5          THE COURT:  I understand that there has been a plea

6    agreement entered into between you and your counsel and counsel

7    for the government.  Is that correct?

8          THE DEFENDANT:  Yes.

9          MS. CUCINELLA:  Yes.

10          THE COURT:  Can counsel hand up the original plea

11    agreement, please.

12          (Pause)

13          THE COURT:  Ms. Cucinella, is this identical save the

14    signatures from the draft furnished my Chambers?

15          MS. CUCINELLA:  Yes, your Honor.

16          THE COURT:  I have before me a typed a plea agreement

17    on the United States Attorney's stationery.  It is addressed to

18    Mr. Di Chiara.  It bears the typed date of June 19th, 2013 and

19    it bears what appears to be the signature of Mr. Williams.

20          MS. CUCINELLA:  That's correct, your Honor.

21          THE COURT:  It also has the signature of Jeffrey

22    Brown.  Is that correct?

23          MS. CUCINELLA:  Yes.

24          THE COURT:  I see here, Mr. Montanez, what appears to

25    be your signature, dated today.  Is that your signature?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A36**

14

Plea

1           THE DEFENDANT:  Yes.

2           THE COURT:  Mr. Di Chiara, is that your signature,

3    dated today?

4           MR. Di CHIARA:  It is, your Honor.

5           THE COURT:  I note just for the record, Mr. Di Chiara,

6    you've inadvertently dated this 7-1213.

7           MR. Di CHIARA:  I thought I made a slash.

8           THE COURT:  There is a slash and 12.

9           MR. Di CHIARA:  I apologize.

10          THE COURT:  With your permission, I will convert that

11   to a 2.

12          MR. Di CHIARA:  Very well.

13          THE COURT:  Mr. Montanez, did you read this agreement

14   before you signed it?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Did you discuss it with your attorney

17   before you signed it?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you believe you understood the

20   agreement at the time you signed it?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  Did you willingly sign this agreement?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did anyone force you to sign it?

25          THE DEFENDANT:  No.

                                                                    15
        Plea

1           THE COURT:  Do you have any agreement with the

2       government about your plea or your sentence that has been left

3       out of this agreement?

4           THE DEFENDANT:  No.

5           THE COURT:  Ms. Cucinella, would you kindly summarize

6       the material terms of the plea agreement.

7           MS. CUCINELLA:  Certainly, your Honor.

8           The defendant is pleading guilty to a violation of

9       Title 18, United States Code, Section 841(b)(1)(B), in

10      satisfaction of Count 1 of the indictment.

11          The parties have stipulated that the offense level is

12      29 and the criminal history category is 2 and that the

13      stipulated guidelines range is 97 to 121 months imprisonment

14      with the mandatory minimum of 60 months and a fine range of

15      15,000 to 150,000.

16          The parties further agreed that neither an upward nor

17      downward departure is warranted and neither party may seek a

18      sentence outside of the stipulated guidelines.

19          Finally, the defendant agrees to waive his appellate

20      rights and his right to file a collateral attack under Section

21      2255.

22          THE COURT:  Does he waive that categorically or is it

23      depending on the sentence that is imposed?

24          MS. CUCINELLA:  One moment, your Honor.

25          (Pause)

A38

16

Plea

1        THE COURT:  Usually, it is.

2        MS. CUCINELLA:  I believe you're right, it is

3   depending on the sentence imposed.

4        THE COURT:  Yes, it is depending.

5        MS. CUCINELLA:  Yes, you're right.

6        THE COURT:  In other words, it provides the defendant

7   waives his right to bring a direct appeal or otherwise

8   challenge his conviction provided he is sentenced to 121 or

9   fewer months imprisonment?

10        MS. CUCINELLA:  That's correct.

11        THE COURT:  Is defense counsel in agreement with the

12   government's summary of the material elements of the plea

13   agreement?

14        MR. Di CHIARA:  Yes.

15        THE COURT:  Mr. Montanez, did you hear Ms. Cucinella

16   summarize the agreement, with an additional comment from the

17   court?

18        THE DEFENDANT:  Yes.

19        THE COURT:  Did you understand what she and the court

20   said in describing the terms of the agreement?

21        THE DEFENDANT:  Yes.

22        THE COURT:  As Ms. Cucinella just stated, the parties

23   have stipulated the sentencing guidelines call for a sentence

24   of between 97 and 121 months imprisonment and a fine range of

25   between 15,000 and $150,000.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

**A39**

17

Plea

1          Do you understand that that stipulation binds the
2    government and it binds you, but it doesn't bind me because I
3    have to make my own independent calculation of your sentence
4    under the sentencing guidelines?
5          THE DEFENDANT:  Yes.
6          THE COURT:  Do you also understand under this
7    agreement, you're giving up your right to ask that I sentence
8    you below the guideline range that is calculated in this
9    agreement both as a matter of under the sentencing guidelines
10   and based on the 3553 (a) factors, the statutory factors?
11         Do you understand that?
12         THE DEFENDANT:  Yes.
13         THE COURT:  Do you understand under the agreement,
14   you're giving up your right to appeal or otherwise challenge
15   your sentence as long as I don't sentence you to more than 121
16   months in prison?
17         THE DEFENDANT:  Yes.
18         THE COURT:  Has anyone made any promise or done
19   anything other than what is contained in the plea agreement --
20         THE DEFENDANT:  No.
21         THE COURT:  -- to induce you to plead guilty?
22         THE DEFENDANT:  No.
23         THE COURT:  Has anyone made a promise to you what your
24   sentence will be?
25         THE DEFENDANT:  No.

18

Plea

1          THE COURT:  With that, Mr. Montanez, would you please

2     now tell me in your own words what you did that makes you

3     believe you're guilty of the charge in the indictment.

4          THE DEFENDANT:  During the year of 2003 to 2013, I

5     agreed with others to sell crack cocaine within the Borough of

6     the South Bronx, Clinton Avenue, and I did sell crack.

7          THE COURT:  Was the object of the conspiracy to

8     distribute 28 grams and more of a mixture and substance

9     containing cocaine base?

10          THE DEFENDANT:  Yes.

11          THE COURT:  When you committed these, these acts, did

12     you know what you were doing was wrong?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you know you were committing a crime?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Does government counsel agree there is now

17     a sufficient factual predicate for a guilty plea?

18          MS. CUCINELLA:  Yes.

19          THE COURT:  Defense counsel, do you agree?

20          MR. Di CHIARA:  Yes.

21          THE COURT:  Mr. Di Chiara, do you know of any valid

22     defense that would prevail at trial or any reason why your

23     client should not be permitted to plead guilty?

24          MR. Di CHIARA:  No.

25          THE COURT:  Mr. Montanez, are you pleading guilty

Plea

<span style="float:right">19</span>

1    voluntarily and of your own free will and because you are, in

2    fact, guilty?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Can government counsel represent had the

5    case gone to trial, it had sufficient evidence of each element

6    to establish a conviction?

7              MS. CUCINELLA:  Yes.

8              THE COURT:  Because you acknowledge you are, in fact,

9    guilty as charged in the indictment, because I'm satisfied you

10   know of your rights, including your right to go to trial,

11   because I'm satisfied you're aware of the consequences of your

12   plea, including the sentence which may be imposed, and because

13   I find you're voluntarily pleading guilty, I accept your guilty

14   plea and I will enter a judgment of guilty on the count to

15   which you have pled guilty.

16             Now, this is important.  The next phase in your case

17   involves the sentencing process.  The Probation Department will

18   want to interview you in connection with the presentence report

19   it will prepare.  I have had a few words to say today about the

20   presentence report.  If you choose to speak with the Probation

21   Department, please make sure that anything you say to them is

22   truthful and accurate.  I read those reports very carefully.

23   They are important to me in determining what a reasonable

24   sentence is in each case.

25             You and your counsel have a right to examine the

Plea

1   report and comment on it at the time of sentencing.  I urge you

2   to read it and discuss it with your attorney before sentencing.

3   If there are any mistakes in it, please point them out to your

4   lawyer so he can bring them to my attention before sentence.

5          Will you agree to do that?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Counsel, is this a case in which your

8   client is seeking an expedited sentence?

9          (Off-the-record discussion)

10         MR. Di CHIARA:  Judge, just a regular request is fine.

11         THE COURT:  Ms. Hummel, may we have a date for

12  sentencing.

13         THE CLERK:  Counsel, the sentencing date is Friday,

14  October 4th, at 3:00 o'clock.

15         THE COURT:  Do you have any problem with that?

16         MR. Di CHIARA:  That is fine, Judge.

17         THE COURT:  Very good.  Mr. Di Chiara, you should

18  arrange for your client to be interviewed by the Probation

19  Department within the next two weeks.  Ms. Cucinella, the

20  government should get its case, factual case summary to the

21  Probation Department also within the next two weeks.

22         Defense submissions are due two weeks before

23  sentencing.  The government submission is due one week before

24  sentencing.  Ms. Hummel has furnished counsel with copies of

25  the Court's procedures for filing of sentencing submissions

21

Plea

1   with the Clerk of Court.  They're completely customary for the

2   defendant.  I take it the defendant is detained?

3          MR. Di CHIARA:  Yes.

4          THE COURT:  Is there anything further from the

5   government?

6          MS. CUCINELLA:  Not from the government.

7          THE COURT:  Anything from the defense?

8          MR. Di CHIARA:  No.

9          THE COURT:  As to this plea proceeding, we stand

10  adjourned.  Are there defendants remaining in the group at one

11  point scheduled for trial on July 22nd?

12         MS. CUCINELLA:  I believe the answer to that is no.

13  We had the Melendez plea scheduled for next Monday.  He

14  technically was, but we should be fine with respect to that.

15         THE COURT:  There was, however, a defendant scheduled

16  for trial, if memory serves, in August, I think perhaps the

17  19th?

18         MS. CUCINELLA:  August 19th.  As to that defendant,

19  there has been no resolution.

20         THE COURT:  No resolution?  Will you please keep my

21  Chambers informed if there is any change in that so that we can

22  schedule accordingly?

23         MS. CUCINELLA:  Absolutely.

24         THE COURT:  We stand adjourned.

25             (Court adjourned)

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

GERALD J. DI CHIARA
ATTORNEY AT LAW
3 PARK AVENUE, 15TH FLOOR
NEW YORK, NEW YORK 10016

(212) 679-1958
FAX NO. (212) 689-3315

LAURA DI CHIARA, ESQ.

December 3, 2013

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **SENTENCING SUBMISSION**
**United States v. Daniel Montanez,**
**13 Cr. 020 (PAE)**

Dear Judge Engelmayer,

This letter-memo and accompanying exhibits are offered pursuant to Rule 32 of the Federal Rules of Criminal Procedure, requesting that the Court impose a sentence at the low end of the guidelines, i.e. **97 months, or, in lieu thereof, as lenient a sentence as to this Court deems just and right.**

**Daniel Montanez,** hereinafter referred to as Montanez, is scheduled for sentencing on December 19, 2013, at 10:00 A.M.

**Plea Agreement, Pre-Sentence Report and Guideline Calculations**

**- Plea Agreement -**

Montanez has an advisory guideline sentencing range of 97 to 121 months. The Department of Probation recommendation, to date, has not been received, by counsel.

The plea agreement recited and the resultant plea before Your Honor, on July 2, 2013, was to a violation of Section 846 and 841 (b) (1) (B), which mandates a mandatory minimum, of 60 months. The Prosecution agreed to the reduction, of the charge, from a (b) (1) (A) which would have carried a statutory minimum, of 120 months, so that the statutory minimum would not impede the defendant's ability, to be sentenced, below this minimum, if the Court sought fit to impose a lesser sentence, based upon his advisory guideline range of 97 – 121 months. The plea agreement is dated June 19, 2013.

Pursuant to the plea agreement the defendant agreed not to seek a sentence below the stipulated guideline range whether by departure, or adjustment, pursuant to the factors


of § 3553 (a). The Agreement does authorize counsel the right to present "any facts relevant to sentencing" (Plea Agreement, p.4). Since the entry of the plea the Court should take note of the continuing of a trend and certain significant occurrences in the attitude by the government toward drug offenses. The Attorney General has issued, a memorandum, dated August 12, 2013, titled, Department Policy Charging Mandatory Minimum Sentences and Recidivist Enhancements which was followed by another memo, Retroactive Application of Department Policy, dated August 29, 2013 (Exhibit A).

It is urged that the Court recognize that for street dealers who are users themselves, as is Montanez, the trend is away from long incarceratory sentences, to sentences that mix punishment infused with treatment, in order to meet the goal of a "reasonable sentence" i.e. "sufficient but not greater than necessary." The Eastern District has instituted pre trial Drug Programs and designated Courts, for this purpose. Finally, as part of Exhibit A, counsel submits a News Release, relating to the U.S. Sentencing Commission's intention to address the concerns with the mandatory minimum penalties and the problems associated with long sentences based upon drug convictions:

"… With a growing crisis in federal prison populations and budgets, it is timely and important for us to examine mandatory minimum penalties and drug sentences, which contribute significantly to the federal prison population."

Counsel's overtures to the Prosecutor's Office to seek further relief based upon the recent memos were denied.

### - Pre-Sentence Report and Guideline Calculations -

The defense has no objections to the Pre-Sentence Report's advisory guideline calculations, as follows:

> Total Offense Level: 29
> Criminal History Category: II
> Advisory Sentencing Range: 97 – 121 months (PSR ¶ 63).

Counsel suggests the following additions and corrections to the PSR, as follows:

1) ¶ 37 should be amended to reflect that the charges recited in this paragraph were dismissed. (Exhibit B, Letter from Montanez's lawyer, dated January 29, 2013).
2) ¶ 49 should be corrected and amended to reflect that when his daughter was born she was a twin, Jeannie, who died during childbirth. The defendant carries a tattoo of her name on his left forearm.

### OVERVIEW

The guideline calculations in this case are based upon a guesstimate of the quantity of small street sales ($5, $10 & $20 variety) made, on an, on again, off again

basis, that accumulated the weight, for guideline purposes. The amount he is taking responsibility for is computed through extrapolation covering a 10 year period. Consequently, the guidelines analysis is almost solely computed and weighted by the quantity of narcotics attributable to the conspiracy, during a long period of time. It is submitted, that the ratcheting up of drug weights and, consequently, guideline levels, in this manner, is misleading and artificially enhances sentences, beyond legitimate sentencing purposes.

Montanez's Criminal History, Level II, reflects 3 criminal history points. An argument can be forged that even this level is somewhat eschewed. A careful analysis of the underlying conviction clearly shows that Montanez pled guilty. This can not be disputed. However, the surrounding circumstances, relating to that plea, are a less than compelling argument for guilt, since Montanez was given the Hobson's choice of pleading guilty and being released, from jail, or, maintaining his innocent plea, and remain incarcerated facing a trial, since he could not make bail.

Also it should be noted that all three points are based upon one crime, which occurred, during the time of the conspiracy charged, herein. The computation attributes, 1 point for the 2008 crime, and, 2 additional points, for a violation of the probation, based upon that crime. As noted all acts occurred, simultaneously.

### Argument

It is urged, there is something inherently wrong in equating a small time dealer, who deals in small quantities, the same way a person is dealt with who has the ability to deal in large quantities, simply by extrapolating all the small sales, and adding them up to punish the small time dealer, as if he were dealing in large quantities of drugs.

In U.S. v. Gupta, 11 Cr. 907, Judge Rakoff noted in sentencing a defendant, "sending a fellow human being to prison 'a formidable responsibility' that requires a court to balance 'a large complex of facts and factors.'

"The notion that this complicated analysis, and moral responsibility can be reduced to the mechanical adding-up of a small set of numbers artificially assigned to a few arbitrarily-selected variables wars with common sense" NYLJ, p.2, October 31, 2012. Although Gupta dealt with the amount of money gained in insider trading conspiracy, whereas, the instant case, deals with the amount of drugs, the end result is the "bizarre results" of this kind of mechanical tabulation that Judge Rakoff took issue with in that case.

## History and Recommendation: 3553(a) Factors

Although the plea agreement precludes counsel from seeking an adjustment pursuant to the factors enumerated in § 3553 (a) since counsel is cognizant the Court must consider these factors in arriving at a reasonable sentence, they will be enumerated, herein. In determining the appropriate sentence to impose, the Court must consider, but is not limited to, the following § 3553(a) factors,:"

- the nature and circumstance of the offense, § 3553 (a) (1);
- the history and characteristics of the defendant, § 3553 (a) (1);
- the need for the sentence imposed to reflect the seriousness of the offense , promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed rehabilitative or other treatment, § 3553(a)(2);
- the sentencing Guidelines and the sentencing range they provide, § 3553 (a) (4), (5);
- the need to avoid unwarranted disparities in sentencing, § 3553 (a) (6); and
- the need to provide restitution to victims of the offense, § 3553 (a) (7).

### HISTORY AND CHARACTERISTICS OF THE DEFENDANT

#### - Daniel Montanez a Personal History -

Montanez is a young man of 29 years. His participation in this conspiracy began when he was a teenager. His actions, although criminal, unfortunately, are not uncommon, for a person raised in a single parent home, under stressful financial circumstances, by a mother, who abused alcohol, herself (PSR ¶ 42). He left school in the 9th grade to support himself.

Montanez began smoking marijuana when he was 15 years old and by the time he was 18 years of age, he was consuming alcohol, to the point of intoxication, and excessively smoking marijuana (PSR¶ 49). He left home, at 16 years of age, and was financially responsible for himself (PSR ¶ 43). During the years when he was not working he did that by selling small amounts of marijuana and, eventually, crack.

Montanez has a daughter, age 6, who he sees on a limited basis, as dictated by her mother, Jocelyn Cruz (PSR ¶ 44). He was under tremendous pressure to care for her financially under the pain of loss of access to his daughter, if he could not so provide. He carries the memory and loss of her twin sister whose name he had tattooed onto his body.

4

Montanez has submitted a letter to the Court which is attached as Exhibit C. A review of this letter, and the accompanying letters, Exhibit D, from his fiance', his mother, family and friends reveal a look into the soul of this young man. They also reflect a positive, caring side to this young man, who is worth helping.

Counsel was struck by the extraordinary acceptance of responsibility and heartfelt remorse evidenced in his words to Your Honor. Rather than looking for someone to blame for his current plight, whether it be his upbringing, his drug use, or his mother, he lays all blame on his own shoulders. In fact, he absolves everyone else and apologizes to them for letting them down while taking sole responsibility for his problems.

"…I would first like to say I am sorry to my family, my friends, my community and any and everyone who may have been affected by my actions. My beautiful mother who raised me with morals and respect showed me the proper way to live my life. I allowed outside influences to lead me into a life of crime, but the choices were mine to make your honor and I take full responsibility for putting myself in this situation I am in. I chose to use drugs and not get a proper education, something I regret dearly. When my daughter passed away your honor I really lost focus of my life and my drug use increased dramatically…" (Exhibit C, p.1)

While incarcerated, Montanez has taken the limited positive steps available, to him, in order to fulfill the sentiments and promises he has made to the Court in his letter. Since there were separations in place, unfortunately, he was not eligible for the drug program that was offered at the MCC. It is respectfully requested, that drug treatment be incorporated in any sentence forged by Your Honor, and that Montanez be recommended by the Court to the 500 hour RDAP offered by the Bureau of Prisons.

He did take part, and enrolled, in a GED program. He earned and received a certificate in Bible study, attached, as part of, Exhibit C. In his own words he has made the Court a solemn promise:

"I bond my word to you Your Honor and the Court that I shall never break the law again." (Exhibit C, p.3)

Finally, a careful reading of the letters from family and friends, Exhibit D, accompanying this letter from counsel, and Montanez's letter, Exhibit C, indicate, that in spite of his wrong doing here, there are positive aspects to this young man that can be nourished. These aspects of his evidence that inside Montanez there is a caring, good young man who, with the Court's mercy and continuing supervision, could be a contributing and positive asset to society.

It is therefore requested that the Court impose a sentence at the low end of the guidelines, **i.e. 97 months, or, in lieu thereof, as lenient a sentence as to this Court deems just and right.**

Respectfully submitted,

Gerald J. Di Chiara

6



Office of the Attorney General
Washington, B. C. 20530

August 12, 2013

MEMORANDUM TO THE UNITED STATES ATTORNEYS AND
               ASSISTANT ATTORNEY GENERAL FOR THE CRIMINAL DIVISION

FROM:           THE ATTORNEY GENERAL

SUBJECT:        Department Policy on Charging Mandatory Minimum Sentences
                and Recidivist Enhancements in Certain Drug Cases

In *Alleyne v. United States*, 133 S.Ct. 2151 (2013), the Supreme Court held that any fact that increases the statutory mandatory minimum sentence is an element of the crime that must be submitted to the jury and found beyond a reasonable doubt. This means that for a defendant to be subject to a mandatory minimum sentence, prosecutors must ensure that the charging document includes those elements of the crime that trigger the statutory minimum penalty.

The Supreme Court's decision in *Alleyne* heightens the role a prosecutor plays in determining whether a defendant is subject to a mandatory minimum sentence. To be sure, the exercise of discretion over charging decisions has always been an "integral feature of the criminal justice system," *United States v. LaBonte*, 520 U.S. 751, 762 (1997), and is among the most important duties of a federal prosecutor. Current policy requires prosecutors to conduct an individualized assessment of the extent to which charges fit the specific circumstances of the case, are consistent with the purpose of the federal criminal code, and maximize the impact of federal resources on crime. When making these individualized assessments, prosecutors must take into account numerous factors, such as the defendant's conduct and criminal history and the circumstances relating to the commission of the offense, the needs of the communities we serve, and federal resources and priorities.[1] Now that our charging decisions also affect when a defendant is subject to a mandatory minimum sentence, prosecutors must evaluate these factors in an equally thoughtful and reasoned manner.

It is with full consideration of these factors that we now refine our charging policy regarding mandatory minimums for certain nonviolent, low-level drug offenders. We must ensure that our most severe mandatory minimum penalties are reserved for serious, high-level, or violent drug traffickers. In some cases, mandatory minimum and recidivist enhancement statutes have resulted in unduly harsh sentences and perceived or actual disparities that do not reflect our Principles of Federal Prosecution. Long sentences for low-level, non-violent drug offenses do not promote public safety, deterrence, and rehabilitation. Moreover, rising prison costs have resulted in reduced spending on criminal justice initiatives, including spending on law enforcement agents, prosecutors, and prevention and intervention programs. These reductions in public safety spending require us to make our public safety expenditures smarter and more productive.

_____
[1] These factors are set out more fully in my memorandum of May 19, 2010 ("Department Policy on Charging and Sentencing") and Title 9 of the U.S. Attorneys' Manual, Chapter 27.

Memorandum to the United States Attorneys and                                    Page 2
  Assistant Attorney General for the Criminal Division

     For all these reasons, I am issuing the following policy[2]:

**Continuation of Charging and Sentencing Policies:** Pursuant to my memorandum of May 19, 2010, prosecutors should continue to conduct "an individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purpose of the Federal criminal code, and maximize the impact of Federal resources on crime." While this means that prosecutors "should ordinarily charge the most serious offense that is consistent with the nature of the defendant's conduct, and that is likely to result in a sustainable conviction," the charges always should reflect an individualized assessment and fairly represent the defendant's criminal conduct.

**Certain Mandatory Minimum Sentencing Statutes Based on Drug Quantity:** Prosecutors should continue to ascertain whether a defendant is eligible for any statutory mandatory minimum statute or enhancement. However, in cases involving the applicability of Title 21 mandatory minimum sentences based on drug type and quantity, prosecutors should decline to charge the quantity necessary to trigger a mandatory minimum sentence if the defendant meets each of the following criteria:[3]

- The defendant's relevant conduct does not involve the use of violence, the credible threat of violence, the possession of a weapon, the trafficking of drugs to or with minors, or the death or serious bodily injury of any person;

- The defendant is not an organizer, leader, manager or supervisor of others within a criminal organization;

- The defendant does not have significant ties to large-scale drug trafficking organizations, gangs, or cartels; and

3

- The defendant does not have a significant criminal history. A significant criminal history will normally be evidenced by three or more criminal history points but may involve fewer or greater depending on the nature of any prior convictions.

**Timing and Plea Agreements:** If information sufficient to determine that a defendant meets the above criteria is available at the time initial charges are filed, prosecutors should decline to pursue charges triggering a mandatory minimum sentence. However, if this information is not yet available, prosecutors may file charges involving these mandatory minimum statutes pending further information and a determination as to whether a defendant meets the above criteria. If the defendant ultimately meets the criteria, prosecutors should pursue a disposition that does not require a Title 21 mandatory minimum sentence. For example, a prosecutor could ask the grand jury to supersede the indictment with charges that do not trigger the mandatory minimum, or a defendant could plead guilty to a lesser included offense, or waive indictment and plead guilty to a superseding information that does not charge the quantity necessary to trigger the mandatory minimum.

---

[2] The policy set forth herein is not intended to create or confer any rights, privileges, or benefits in any matter, case, or proceeding. *See United States* v. *Caceres*, 440 U.S. 741 (1979).

[3] As with every case, prosecutors should determine, as a threshold matter, whether a case serves a substantial federal interest. In some cases, satisfaction of the above criteria meant for low-level, nonviolent drug offenders may indicate that prosecution would not serve a substantial federal interest and that the case should not be brought federally.

**Advocacy at Sentencing:**  Prosecutors must be candid with the court, probation, and the public as to the full extent of the defendant's culpability, including the quantity of drugs involved in the offense and the quantity attributable to the defendant's role in the offense, even if the charging document lacks such specificity.  Prosecutors also should continue to accurately calculate the sentencing range under the United States Sentencing Guidelines.  In cases where the properly calculated guideline range meets or exceeds the mandatory minimum, prosecutors should consider whether a below-guidelines sentence is sufficient to satisfy the purposes of sentencing as set forth in 18 U.S.C. § 3553(a).  In determining the appropriate sentence to recommend to the Court, prosecutors should consider whether the defendant truthfully and in a timely way provided to the Government all information the defendant has concerning the offense or offenses that were part of the same course of conduct, common scheme, or plan.

**Recidivist Enhancements:**  Prosecutors should decline to file an information pursuant to 21 U.S.C. § 851 unless the defendant is involved in conduct that makes the case appropriate for severe sanctions.  When determining whether an enhancement is appropriate, prosecutors should consider the following factors:

- Whether the defendant was an organizer, leader, manager or supervisor of others within a criminal organization;

- Whether the defendant was involved in the use or threat of violence in connection with the offense;

- The nature of the defendant's criminal history, including any prior history of violent conduct or recent prior convictions for serious offenses;

- Whether the defendant has significant ties to large-scale drug trafficking organizations, gangs, or cartels;

- Whether the filing would create a gross sentencing disparity with equally or more culpable co-defendants; and

- Other case-specific aggravating or mitigating factors.

In keeping with current policy, prosecutors are reminded that all charging decisions must be reviewed by a supervisory attorney to ensure adherence to the Principles of Federal Prosecution, the guidance provided by my May 19, 2010 memorandum, and the policy outlined in this memorandum.



**A53**



# Office of the Attorney General
### Washington, D.C. 20530

August 29, 2013

MEMORANDUM TO THE UNITED STATES ATTORNEYS AND
ASSISTANT ATTORNEY GENERAL FOR THE CRIMINAL DIVISION

FROM:           THE ATTORNEY GENERAL

SUBJECT:        Retroactive Application of Department Policy on Charging Mandatory
                Minimum Sentences and Recidivist Enhancements in Certain Drug Cases

This memorandum provides additional guidance to federal prosecutors for cases that were
charged before I issued the August 12, 2013, memorandum setting forth Department policy on
charging mandatory minimum sentences and recidivist enhancements in certain drug cases
(hereinafter referred to as the "Attorney General's policy memorandum"). In brief, the policy applies
as follows:

- *For cases charged and awaiting adjudication of guilt*: the policy is applicable to all such
  cases.

- *For cases in which guilt has been adjudicated and sentence has not yet been imposed*: the
  policy may be applied in the discretion of the prosecutor, and prosecutors are encouraged to
  apply the policy in guilty-plea cases where legally and practically feasible.

- *For cases in which sentence has been imposed*: the policy is not retroactively applicable.

DISCUSSION

The applicability of the Department's policy depends on the stage of the proceeding.

*Defendants Charged But Not Yet Convicted.* In the case of a defendant who was charged
before the policy's issuance, but who has not pleaded guilty or been convicted, prosecutors should
apply the new policy and pursue an appropriate disposition consistent with the policy's section,
"Timing and Plea Agreements." Application of the policy also may require a motion to withdraw an
information previously filed under 21 U.S.C. § 851.

In applying the policy, prosecutors should consider all of the facts and circumstances of a
case. In particular, in determining whether a defendant has a "significant" criminal history,
prosecutors should evaluate the facts beyond the number of criminal history points. While a
significant criminal history is normally evidenced by three or more criminal history points, that is not
a mechanical test. A criminal history involving three or more points may not be significant for
purposes of the policy if, for example, a conviction is remote in time, aberrational, or for conduct that
itself represents non-violent, low-level drug activity.

Memorandum to the United States Attorneys and                                              Page 2
Assistant Attorney General for the Criminal Division

    Defendants Who Have Pleaded Guilty But Have Not Been Sentenced. In cases in which a defendant would not have been charged with the mandatory minimum under the new policy but previously entered a guilty plea and admitted to facts triggering a mandatory minimum, prosecutors are encouraged to seek relief from the mandatory minimum sentence. In determining whether relief is warranted, prosecutors should consider all pertinent facts, including the criteria stated in the Attorney General's memorandum, the need to equitably treat co-defendants charged in the same case, and any other pertinent circumstances regarding the offender and the prosecution.

    In many cases, relief from the plea is unnecessary because the defendant qualifies for relief from the mandatory minimum through the safety valve, 18 U.S.C. § 3553(f). It may also be unnecessary if the government files a motion under 18 U.S.C. § 3553(e) to depart from the mandatory minimum based on cooperation. In other cases, prosecutors can seek relief from the prior guilty plea by negotiating a plea agreement in which the defendant agrees to plead guilty to a superseding information charging the drug offense without the pertinent quantity, and the government agrees to move to dismiss original indictment under Federal Rule of Criminal Procedure 48(a).

    Alternatively, if permitted by the court, prosecutors may move to dismiss the charged allegation of the enhancement fact. Such a motion is functionally equivalent to dismissing a greater offense, leaving the conviction for a lesser-included offense intact. See Alleyne v. United States, 133 S. Ct. 2151, 2162 (2013) (describing the allegation of an enhancement fact as that of a greater offense: "When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury.").

    With respect to defendants who previously pled guilty following the filing of an information under 21 U.S.C. § 851, and have not been sentenced, prosecutors are also encouraged to consider the guidelines stated in the Attorney General's memorandum and, where appropriate, move to withdraw a Section 851 information before sentencing.

    Defendants Convicted At Trial. As a general matter, prosecutors should not seek relief for a defendant who was previously convicted at trial where the jury found a drug quantity that requires a mandatory minimum sentence (beyond any relief that a defendant is entitled to under application of the safety valve or based on cooperation with the government). Nevertheless, prosecutors have discretion to seek relief in an unusual case upon determining that the interests of justice so require. Such unusual circumstances may arise, for example, where the defendant persuasively explains that he proceeded to trial only to contest a mandatory minimum provision that would not be charged under the new policy, or where action is required to assure consistent treatment of co-defendants in the same case or closely related cases.

    If a decision is made to seek relief, the government may proceed in accordance with the Rule 48(a) procedure stated earlier, that is, by moving to dismiss the count of conviction and replacing it with a plea to a superseding information or by simply moving with the court's permission to strike the conviction for the greater included offense and retain a conviction for the drug offense without the mandatory minimum.

    Separately, with respect to defendants who were convicted at trial following the filing of an information under 21 U.S.C. § 851, and have not been sentenced, prosecutors are encouraged to consider the guidelines stated in the Attorney General's memorandum and, where appropriate, move to withdraw an 851 information before sentencing.

Memorandum to the United States Attorneys and                                     Page 3
, Assistant Attorney General for the Criminal Division

     Defendants Who Have Been Sentenced. Prosecutors should not disturb the sentence in a
case in which the sentence has been imposed, whether or not the case is on direct appeal or in some
other stage of post-conviction litigation. *See Dorsey v. United States*, 132 S. Ct. 2321, 2335 (2012)
(stating with respect to a statutory change that "in federal sentencing the ordinary practice is to apply
new penalties to defendants not yet sentenced, while withholding that change from defendants
already sentenced.").

     Prosecutorial Discretion. Application of the policy—and any decision to afford relief to
those already convicted but not yet sentenced—is an exercise of prosecutorial discretion over
charging decisions. See *United States* v. *Armstrong*, 517 U.S. 456, 464 (1996); *Wayte* v. *United
States*, 470 U.S. 598, 607 (1985); *Rinaldi* v. *United States*, 434 U.S. 22 (1977) (per curiam); see also
*United States* v. *Labonte*, 520 U.S. 751, 762 (1997) (similar as to discretionary decision whether to
file an enhancement notice under Section 851). Prosecutors should oppose any motion initiated by a
defendant, under Rule 11, Rule 33, or any other provision, without the government's consent, to seek
relief from a mandatory minimum sentence based on the government's new charging policy.[1]

---

[1] As stated in the Attorney General's memorandum, the policies set forth in these memoranda are not intended to
create or confer any rights, privileges, or benefits in any matter, case, or proceeding. *See United States v. Caceres*,
440 U.S. 741 (1979).

ᴠ: Hall, Greg
7672054
IECT: READ THIS—Your Letters Worked!!!!!
Ξ: 08/18/2013 01:22:00 AM

eryone:

in June I sent out a form letter that I asked everyone to send to the U.S. Sentencing Commission. The form letter
ᴜsted that the Commission consider reducing, RETROACTIVELY, the drug and fraud guideline tables. Well, our voice has
heard. On Thursday the Commission issued a press release indicating that it has agreed to consider implementing an
ᴤs the board reduction in the drug quantity table. In all, the Commission reports that it received 14,000 letters.

ks again to each and every one of you who took the time to send in one of the letters. We CAN make a difference if we
together. I expect in the coming months that the Commission will indeed adopt the across the board, retroactive
ᴄtions we are seeking.

ny Gordon, Esq.
Ν. Franklin St. Ste. 100
ιhachie, Texas 75165

ᴐ72-483-4865

ιil:  info@topfederallawyer.com (newsletter sign-up)  

.  info@gordondefense.com (retention inquiries)

/S RELEASE

mmediate Release
ᴜst 15, 2013
ᴁct: Jeanne Doherty
ιc Affairs Officer
) 502-4502 | pubaffairs@ussc.gov

 SENTENCING COMMISSION SELECTS POLICY PRIORITIES FOR
ᴣ 2014 GUIDELINES AMENDMENT CYCLE

ᴛlnued Work on Mandatory Minimum Penalties, Review of Drug Guidelines on List of Priorities

ᴣHINGTON, D.C.  The United States Sentencing Commission today unanimously voted
ᴤ s list of priorities for the coming year, including consideration of federal drug sentences and
ᴉnued work on addressing concerns with mandatory minimum penalties.
Commission set as its top priority continuing to work with Congress to implement the
ᴐmmendations in its 2011 report on federal mandatory minimum penalties, which included
ᴐmmendations that Congress reduce the severity and scope of mandatory minimum penalties
 consider expanding the "safety valve" statute which exempts certain low-level non-violent
nders from mandatory minimum penalties.

 Commission also set out as an important new priority reviewing the sentencing guidelines
licable to drug offenses, including consideration of changing the guideline levels based on
ᴣ quantities. Drug offenders account for nearly half of all federal inmates, and an adjustment
ᴉe Drug Quantity Tables in the sentencing guidelines could have a significant impact on
tence lengths and prison populations.

s to examine mandatory minimum penalties and drug sentences, which contribute significantly
> the federal prison population," Judge Patti Saris, Chair of the Commission, said. "These
eviews are key components of the Commission s ongoing work to further the goals of the
ientencing Reform Act that the federal sentencing scheme and the guidelines be flexible, certain,
ind fair."

he Commission noted in its priorities a focus on fulfilling its statutory mandate to work to
educe overcapacity in federal prisons.

The Commission is looking forward to a serious and thoughtful reconsideration of some of the
ientencing guidelines which most strongly impact the federal criminal justice system," Judge
Saris said. "I am glad that members of Congress from both parties and the Attorney General are
ingaged in similar efforts."

The Commission s priorities include continued work on multi-year projects to review and
iotentially amend the guidelines governing economic crimes, to comprehensively study
ecidivism, and to review practices related to violations of probation and supervised release. The
Commission will also study the statutory and guideline definitions of key sentencing terms
ncluding "crime of violence" and "drug trafficking offense."

The Commission will also consider amending the policy statement pertaining to compassionate
elease, resolution of certain conflicting interpretations of the guidelines by federal courts, and
mplementation of the Violence Against Women Reauthorization Act of 2013 and other recently
inacted crime legislation. It will continue work related to issues raised in its recent reports on
child pornography offenses and on the continuing impact of the Supreme Court decision in
United States v. Booker, which made the federal sentencing guidelines advisory.

The Commission annually identifies policy priorities in accordance with its statutory authority
and responsibility to periodically review, analyze, and revise federal sentencing guidelines. The
Commission published tentative priorities and invited public comment in May and received more
than 14,000 letters of public comment in response.

JOEL K. PEISTER Attorney At Law
9 East 40th Street 11th Floor • New York, N.Y. 10016 • (212) 889-8151 • Fax (212) 725-4799

29 January 2013

DANIEL MONTANEZ
C/O MILAGROS SUAREZ
150 W BURNSIDE AVE
BRONX, NEW YORK
1043        APT 45

RE: Docket # 2012BX047936

Dear Mr. Montanez:

Please be advised that the above referenced matter was dismissed and the Court records sealed today in Part B, Bronx Criminal Court. This means that the case is over and you do not have to return to Court on this case.

If you have any questions feel free to contact my office

very truly yours,

JOEL K PEISTER

Daniel Montanez
#67908-054
MCC
150 Park Row
New York, NY 10007


The Honorable Judge EngelMayer

Thank you your honor for allowing me to express myself to you and the court. I would first like to say I am so sorry to my family, my friends my community and any and everyone who may have bee affected by my actions. My beautiful mother who rais me with morals and respect showed me the proper way to live my life. I allowed outside influences to lead me into a life of crime, but the choices were mine to make your honor and I take full responsability for putting myself in this situation I am in. I chose to use drugs and not get a proper education. Some thing I regret dearly. When my daughter passed away your hono I really lost focuse of my life and my drug use increas dramaticly. I have let my mother down, my two beautif children and my little sister, those that love me the most

Being incarcerated has shown me what is truly important and I shall never take my life, or any one else's life for granted ever again. I know that selling drugs is wrong your honor, but fast money along with stupidity, had me thinking everything was okay the way I was living when I was working as a stock clerk and a butcher my life was alot more stable. I was happy your honor. I was doing something positive with my life.

I have already begun taking the life long steps needed to being a productive human being. My entire outlook on life is different your honor and going through all of this has made me a better man. I made a promise to myself that I will be a law abiding citizen, never to break the law again. I will do all in my power to make sure I surround myself with positive people, and go back to school and further my education so I may obtain a good paying job to take care of myself and family. I am currently enrolled in a GED program, and I look forward to taking my GED test and also wanted to attend the drug treatment program at MCC but not allowed due to a Sep. But when the opportunity presents itself, I will also place myself in a out-patient program upon my release. But without your wisdom and mercy on me, My plans will be in jeopardy your honor

I bond my word to you your honor and the court that i shall never break the law again. I thank you so much for taking time out of your day to read what i had to share with you.

Once again i am so sorry for all I've done, your honor, and I've learned my lesson very much. I thank you for your time and patience your honor, have a blessed day

Sincerly,

Daniel Maclaney

A62

# AMERICAN BIBLE ACADEMY

Presents this Certificate to

Daniel Montanez

upon successful completion of

Study Course __The Gospel of John__

Awarded the __17th__ day of __September__ , __2013__ .







*Joseph Welch*
ACADEMIC DEAN

*Mrs. Gwen Wadell*
REGISTRAR

---



**GRADE REPORT**
**AMERICAN BIBLE ACADEMY**
**P.O. BOX 1627**
**JOPLIN, MO 64802-1627**

NAME:    Daniel Montanez              STUDENT ID#: 387935

COURSE:  The Gospel of John                      DATE: 9/17/13

EXAM 1:  85        EXAM 2:  84        EXAM 3:   84

FINAL GRADE: 84          CREDITS:   0

Grading Policy - The grading system used by A.B.A. is as follows:

A+ ....100-99%   A ........98-95%   A- .......94-90%   B+ ......89-87%   B ........86-84%
B- .......83-80%   C+ ......79-77%   C ........76-74%   C- .......73-70%   D+ ......69-67%
D ........66-64%   D- .......63-60%   F ..........59-0%

Please update any changes in your mailing address.
Websites: www.abarc.org • www.arm.org

August 10, 2013

Dear Judge Engelmayer,

Daniel has known my family for a few years and they got along great. He would go out with my sisters and I would just hear what a great gentlemen he was with them. A few days after I met Daniel he came over and made me dinner, which just made me see what my sisters were talking about. This surprised me because guys usually do not cook but he was an awesome chef and he did not allow me to do anything. His caring ways won me over.

I have had the pleasure of knowing Daniel Montanez for two years. We have evolved from a friendship to having a romantic relationship. During all the past two years he has become the person I can count on unconditionally day by day. He's my best friend, he makes me happier, and his positivity, great sense of humor made me see the world in a different way. He makes the people around him become better people with his nurturing and willingness to help others. He also has been a great friend to my son as well as a great father to his daughter when given the opportunity. He cares for them, makes time to play with them, helps them with their homework, picks them up from school, cooks for them and plays the role of a good father to both. Going to the movies is their favorite thing to do because that means that they get to go to Chuck-E-Cheese to play afterwards and they enjoy the time spent with him a lot. He is the kind of man to the kids that a lot of fathers wish they were.

Within these years I have known Daniel in many capacities. His responsibilities were taken very seriously to him. He would work at the well known supermarket chain, Food Bazaar, for more than eight hours and at times he would have a double shift to then come to my apartment and help me with the apartment chores or with my son and his school work as well. He would do anything to alleviate my duties being that I also work full time. While working there in a time span of two months amongst the managers they were already having conversations to give Daniel the title of assistant manager for his dedication and hard work. He never ceases to amaze me because I hold high standards for him and he always showed me no less than what I expected. He has the drive to grow and pushes himself to become a better person day by day. Daniel is a loveable, capable, family-oriented, dedicated, and intelligent man. Having Daniel in my life has been a blessing because he's an amazing person and has a huge heart.

Sincerely,

Zahir Diaz

October 09, 2013

Dear Judge Engelmayer,

I, Milagros Suarez, mother of Daniel Montanez can say he has been the best son there is. He is my protector and my helping hand. He never hesitates to come in the kitchen and assist in it. He enjoys cooking while he listens to music. He attempts to dance but is not the best dancer which we always laugh about. He brings joy to our home with his silliness and jokes. As family we go through our ups and downs and nothing has ever been perfect but I can say he always tried to look at the positive in every situation, which I always secretly admired him for, and made me so proud.

Daniel's most price possession is his daughter, Janellie. When the mother of his child would allow Janellie to come over so he can spend time with his daughter it was the best days of his life. He loves his daughter so much and enjoys every minute with her. He is very loving and caring towards her and his niece and nephews. The kids are his world. He is an amazing father to her and worries about his daughter and her well being.

As a mother you never want to see your child suffer or go through hardships but circumstances do happen and all I can say is that I know Daniel, as the bright, smart, outgoing, respectful, hard worker, willing to do better for himself. I taught him of being mindful of others feelings and I think he has because he is very caring towards others, since I notice he always puts others everyone else before himself. He is such a family man and enjoys his time with us. He always looks forward to the big holidays since we all get together for our dinners. The times that we didn't spend those holidays together because I would go away on vacation he would spend it sad. This past year he bought all the children in the family the most wonderful toys for them because he enjoyed seeing their smiling faces on Christmas morning. It was very nice for them to play with and of course Daniel would play with them as well. It was just wonderful; he is such a humble man.

Sincerely,

Milagros Suarez

10/22/2013

Dear Judge Engelmayer,

I am writing this letter to let you know that I Millanette Montanez, sister of Daniel Montanez, can sincerely say he is a great brother. As kids I remember he would read to me right before bed time. At times I didn't care to be read to but having my brother there comforted me and I knew I was going to be okay right before going to bed. I have the best memories of us in the park getting wet in the sprinklers or when we made our mother make us smoothies to drink along with popcorn so we can watch movies at home. I always knew that having my brother by my side I was always going to be okay. He has always been there showing me support whenever I needed him. During the toughest times in my life I can remember my brother being the one to count on. He was the shoulder I always leaned on to confide in and express my emotions to. I would not trade my brother for anything because he is the ideal person for me. I call him my twin although I am younger because I am attached to him and without him I feel incomplete. Daniel always made me laugh and challenged me with new ideas of how I can push myself to be a better person. He is the kind of person that makes everything better because his positivity is just incomparable.

He is a loving and caring uncle to my three kids. He is the most fun and outgoing person to be around. He is always there to play with my kids or even babysit them when in need. For Christmas he is the one jumping around with the children and excited to play with all their toys with them. He brings joy to my children's life. I know my kids miss him; it makes me sad to think he is not around them being that he was so active in their life. Hearing my niece also ask for her father is a heart break for me because he is very loving and supportive father. He enjoys and takes advantage of the time with his daughter. She is his main priority and is always on top of what she needs. When he had her on school days he would help her with her assignments. He enjoys taking her out to different places and has her see different things that children enjoy. She is his mini him, looking at her is seeing him. They loved to go shopping together; they would match sneakers and clothes. He always made sure that she was well taken care of when he was with her. I can say that he is a great person, awesome dad and uncle and of course the best brother a sister can have.

Sincerely,

Milianette Montanez

November 02, 2013

Dear Judge Engelmayer

Thinking of Daniel Montanez is thinking of the son that I did not have. I, Felicita Polanco, mother of three females and one of them being, Zahir his girlfriend, would like to mention the man I see Daniel is. I first and foremost am a single mother and would like to say that my daughters mean everything to me and I would never want to see them associated with someone who is no potential, or someone who can be a bad influence. With this said, Daniel is a kind, loving, helpful and modest. I have known Daniel for about four years and he has allowed me to open my heart and welcome him in it.

Daniel is a man that loves being around us and we love having him around too. He always makes sure everyone is enjoying themselves. As a father he would bring his daughter, when he was allowed to have her, and I can say she fits right in with my grandkids. You can tell when she was with him she was happy. He took care of her and always made sure that she was okay. There are very few responsible fathers like him that I have known. He cares for her as much as he cares for my grandkids. His paternal qualities are amazing and this has also been one of the reasons why I know Daniel is a great man.

People do make mistakes; I know those that learn from the mistakes are those that become better people because they would not like to experience the same hardships again. I feel as if Daniel is one of those people. He is a hard working man, who is full of life and spirit. He makes the environment he is in a happy, positive one. He strives to do better and be there for people when in need. Daniel is a person who enjoys his family and the moments that he spends with us. He is a member of our family and we care for him as one of our own. I have not had the pleasure to interact with his family as much as I would like to but as far as Daniel goes he would attend our family events and holiday dinners and he would make it that much more special. I have a picture of one moment when Daniel opened one of his Christmas gifts that I wrapped for him and he got teary eyed because he said he is very blessed to have met us and gave a small speech on how it meant so much that we have embraced him as one of our own. He made all of us emotional and showed us how companionate of a man he can be and in front of everyone despite of who was there he showed his true emotions. That showed a lot of courage because most men usually do not embrace their feelings but he did not care, he always showed who he is and I always appreciated the honesty that he offers. I am very confident that Daniel is a great man and will achieve his goals to become a better man than what I believe and have seen him to be.

Sincerely,

*Felicita Polanco*
Felicita Polanco

October 20, 2013

Character Reference for Daniel Montanez

Dear Judge Engelmayer:

My name is Liliana Rodriguez and I have known Daniel for the past five years. We were well acquainted due to the fact that we lived in the same neighborhood. He is very polite and always willing to lend a helping hand. In my time knowing him he has also become my sister's boyfriend which has also shown me a more personal side to him.

Being a single mother of 2 kids he always brings his daughter around so we can get the kids together. He is very family oriented and committed to his loved ones. He is always the first to run an errand for my family if we need an extra hand. He has contributed and assisted my sister and her son as well. If my sister, couldn't get out of work due to an emergency he was the first one to go pick up her son at school, participate in after school activities with him and participate in our family traditions.

I have really come to see him as a big brother of my own and I know he has a lot of potential. He has a lot of goals he wants to achieve and I can honestly say we very much do believe in him. He hasn't always had great support growing up and to see his efforts and participation with my family it has made the greatest difference.

My number is 347-484-7566 you need to contact me with any further questions.

Thank you,

Liliana Rodriguez

November 11, 2013

Dear Judge Engelmayer,

I am respectfully writing to you, your honor, to express my thoughts on my dear friend, big brother and also consider him now my brother in law, although he is not married to my sister, Daniel Montañez. He is someone I have known for the past 5 years as an energetic, humble, generous, honest, helpful, dependable, loving man. I can go on and on with his attributes because to me he is someone who I love for being who he is to me and my family.

Before he was welcomed as a member of my family I remember meeting Daniel and instantly it was fun and nonstop laughter. He also became protective over me and my other sister, in the sense that if we had to walk to the train he would keep us company because he would not want anything to happen to us, his little sisters, as he would call us. He made us feel safe. He also made our not so good days brighter with his outgoing personality. Sometimes he would come to our house and just cook with us or assigned duties for everyone to do so we didn't have to feel overwhelmed with our tasks in the kitchen. It was our bonding time at home, right before a movie. I also remember one of my favorite memories with him trying to learn the family's favorite board games so he can try to feel included during game night. The funniest thing would be when we would trick him so he can lose the game. He would notice after my family will be ahead of him but he would never get upset, he would laugh it off and say "when this round is over we are going to play again, this doesn't count and I barely know the rules". He would always try to redeem himself in the game but we were always a step ahead in the board game. He was such a team player and showed good sportsmanship and if he had a competitive side he definitely didn't show it with us. It was always fun to be around him.

Daniel is very helpful and we miss that helping hand around here. I know he is full of potential to become a great man and is such a great asset to my family and myself. I am very confident in the man he can become because of his positivity, hard working, gracious, loving man he is.

Sincerely,

Viviana Rodriguez

10|15|13

To whom it may
Concern,

My name is Allen Ottley I have
known Darrel Montanez for six years.
durning these years I've seen hers
a great freind, uncle to my children,
brother but most of all agreat father.
He loves his daugther and he
always is there to support his family.

Sincerly yours
allon Ottley

Case 1:13-cr-00020-PAE   Document 120   Filed 12/18/13   Page 1 of 2

GERALD J. DI CHIARA
ATTORNEY AT LAW
3 PARK AVENUE, 15TH FLOOR
NEW YORK, NEW YORK 10016

(212) 679-1958
FAX NO. (212) 689-3315

LAURA DI CHIARA, ESQ.

December 18, 2013

Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **SENTENCING SUBMISSION 1ˢᵗ ADDENDUM**
**United States v. Daniel Montanez,**
**13 Cr. 020 (PAE)**

Dear Judge Engelmayer,

Counsel submits, for the Court's consideration, at sentencing, on December 19, 2013, recently received Certificates, from the Education Department, of the MCC, attached as an Exhibit, hereto. Montanez earned these certificates while incarcerated.

Counsel apologizes for their late submission but they were only obtained, by counsel, on December 17, 2013.

Respectfully submitted,

Gerald J. Di Chiara

# CERTIFICATE OF COMPLETION

The Metropolitan Correctional Center New York
Education Department

would like to present this

*to*

## DANIEL MONTANEZ

For successful completion of the self-study course

### Lost Kingdoms of the Maya

on November 20, 2013



The Metropolitan Correctional Center, New York
Education Department

*would like to present this*

# CERTIFICATE OF COMPLETION

*to*

## DANIEL MONTANEZ

*For completion of the six week course,*

### The American Revolution

*on November 20, 2013*

H. Martinez, Education Department

**A73**

The Metropolitan Correctional Center New York
Education Department
would like to certify

# CERTIFICATE OF COMPLETION

to

## DANIEL MONTANEZ

For successful completion of this public study course

### Ancient Rome I

on November 20, 2013

H. Stevens, Education Coordinator

Case 1:13-cr-00020-PAE   Document 118   Filed 12/12/13   Page 1 of 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                  :

UNITED STATES OF AMERICA          :

                  - v. -              :      13 Cr. 020 (PAE)

                                    :

DANIEL MONTANEZ,              :

                  Defendant.      :

-----------------------------------------------------------------X

## GOVERNMENT'S SENTENCING MEMORANDUM

 

 

PREET BHARARA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Damian Williams
Brooke E. Cucinella
Assistant United States Attorneys
   - Of Counsel -

## PRELIMINARY STATEMENT

The defendant, Daniel Montanez ("Montanez" or the "defendant"), is scheduled to be sentenced on December 19, 2013 at 10:00 AM. The Government respectfully submits this memorandum in advance of the sentencing proceeding. The parties agree that the applicable United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range is 97 to 121 months' imprisonment (based on a total offense level of 29, a Criminal History Category of II).

Because the defendant was a prime mover of crack cocaine over the course of a nearly decade-long narcotics conspiracy, the Government respectfully urges the Court to impose a sentence of imprisonment within the Guidelines range.

## FACTUAL BACKGROUND

### I.    The Defendant's Criminal History

The parties agree that Montanez has three criminal history points, placing him in Criminal History Category II. The defendant's criminal history include multiple drug arrests, most of which are considered relevant conduct, as they are part of the conspiracy's narcotics distribution in and around 1360 Plimpton Avenue in the Bronx. Montanez, however, receives one criminal history point for shooting a man in the thigh in 2008. He was sentenced to five years' probation in 2009. While on probation, the defendant continued to distribute crack cocaine. As a result, he receives two additional criminal history points under U.S.S.G. §4A1.1(d).

### II.    The Instant Offense

After presiding over the trial of Angelo Fernandez ("Fernandez"), the leader of the Plimpton Avenue conspiracy, the Court is uniquely familiar with the facts and circumstances underlying the instant offense. As the Court knows, Daniel Montanez was one of Fernandez's

key lieutenants—a person on whom Fernandez relied to distribute crack cocaine in and around

1360 Plimpton Avenue. The relationship between Montanez and Fernandez was explained in

vivid detail by Montanez himself. In a crack cocaine transaction captured by a Confidential

Informant (the "CI"), Montanez explained the conspiracy's origin and basic structure:

| | |
|---|---|
| Confidential Informant: | What happened with that guy? Uh, you and those people there? You're having problems? |
| **Montanez:** | **No, we're not really having problems but, like. . . 'cause we best friends, but, business wise we're having a little problem, like, he's starting to get greedy and all that shit.** |
| Confidential Informant: | So, he's trying to take away your shit? |
| **Montanez:** | **So, yes, so... not, uh...** |
| Confidential Informant: | But... |
| **Montanez:** | **... like it was ...** |
| Confidential Informant: | ... But, but... |
| **Montanez:** | **We did it together. We did it...** |
| Confidential Informant: | ... but ... |
| **Montanez:** | **... together.** |
| Confidential Informant: | ... but he's the boss, Scarface. |
| **Montanez:** | **Yeah, yeah. Scarface, he's the boss.** |
| Confidential Informant: | Uh, he's the boss, right? |
| **Montanez:** | **But the thing is he's the boss... uh... That's... that block... that... that's his block.** |
| Confidential Informant: | Right. |
| **Montanez:** | **Right? And he do... he do... He's the boss of the weed shit.** |
| Confidential Informant: | Right. |

2

| Montanez: | But when it came to this shit… |
|---|---|
| Confidential Informant: | Yeah. |
| Montanez: | … he's the boss but he really didn't do nothing. |
| Confidential Informant: | Right. |
| Montanez: | All he did was… |
| Confidential Informant: | So he wants to be the boss of the crack, too. |
| Montanez: | Basically, basically, yeah, basically what he did was get us the work. |
| Confidential Informant: | Right. |
| Montanez: | The customers, we got them. Yeah? Everybody knows us. |
| Confidential Informant: | Oh. |
| Montanez: | So we got into a little thing with him 'cause he… like… |
| Confidential Informant: | He wants everything. |
| Montanez: | … he wants everything for him, him, him, him, him and he wanna, like keep playing us like… like… we his boys, 'cause we grew up together, we got like… |
| Confidential Informant: | [U/I] |
| Montanez: | … since junior high school together. |
| Confidential Informant: | Yeah, so… he's trying, trying… |
| Montanez: | We got… we got… we… we got like 15 years on that block. |
| Confidential Informant: | Wow! |
| Montanez: | See, the guy that's… I don't know if you can see the guy that's on the wall? Drawing on the wall? |
| Confidential Informant: | Yeah, yeah, yeah, yeah. |
| Montanez: | Alright. Well, he… we used to work for him, all of us… |

3

| | |
|---|---|
| Confidential Informant: | Right. |
| **Montanez:** | **...and when he got killed, basically, we still with the block.** |
| Confidential Informant: | Right, right. |
| **Montanez:** | **And we put him in the... like we put him in his position, like, "Here, you stay with the boss. You be the boss."** |
| Confidential Informant: | You be the boss. |
| **Montanez:** | **You don't want none of that bullshit 'cause that shit brings trouble.** |

(Ex. 1-T at 3-6.)

Montanez then details his conduct, explaining that he not only provides the conspiracy with its crack cocaine customers, but that he also makes deliveries of crack cocaine. The defendant further admits participating in a violent attack on a man with whom Fernandez was fighting and notes that "I cut some guy for [Fernandez]."[1]

| | |
|---|---|
| Confidential Informant: | He make it seem like he's not the boss of the crack. |
| **Montanez:** | **Yeah, well...** |
| Confidential Informant: | He's the boss. |
| **Montanez:** | **He... he is! 'Cause he's the one that puts the money up.** |
| Confidential Informant: | Oh. |
| **Montanez:** | **He don't... he don't sell crack. He doesn't know, like, he don't know the customers. He don't know [U/I].** |
| Confidential Informant: | But he's the one that in... |
| **Montanez:** | **He's the one that...** |

---

[1] On January 16, 2011, Fernandez – working with unidentified co-conspirators – robbed a livery cab driver. During the robbery, the assailants (including Montanez, by his own admission) used a weapon to brutally cut the cab driver's face from cheek to cheek. Fernandez was arrested for the assault on January 23, 2011. Before his statement to the CI, Montanez had not been identified as one of the assailants. The Government does not believe that the robbery was drug-related; it appears to have stemmed from a fare dispute.

| | |
|---|---|
| Confidential Informant: | … the… he's the one the… the money maker. |
| **Montanez:** | **… that… that puts the money in.** |
| Confidential Informant: | To the crack. |
| **Montanez:** | **To the crack.** |
| Confidential Informant: | Oh. |
| **Montanez:** | **So… I was like… I was like… Damn!  Like…** |
| Confidential Informant: | Yeah, he's the money man.  He's the guy with the money. |
| **Montanez:** | **Yeah.  He's… he's starting to get like money hungry, like… and he used to get in there.  At the end of the day we're his friends, regardless of money.  Look, they… like two years ago. Two years ago we got into a thing, right?  And he got locked up, like I cut some… I cut some guy for him.** |
| Confidential Informant: | Right.  Oh, you cut a guy for him? |
| **Montanez:** | **Yeah, 'cause he… you know he was fighting or whatever and I… I cut the guy.  I… I… I came, I hit the guy and I started cutting the guy.  Long story short, he got locked up.  His bail was 20,000 dollars.  We… we bailed… we bailed him out, like we hustled for free.** |

* * *

| | |
|---|---|
| Confidential Informant: | So… so, he was a… he was the boss 'cause he put the money in. |
| **Montanez:** | **Yeah, that's it.  That's it!** |
| Confidential Informant: | Right, right, right. |
| **Montanez:** | **Yeah.  Just 'cause he put the money.  'Cause he don't know no customers.** |
| Confidential Informant: | Oh… O.K.… |
| **Montanez:** | **He don't know… he don't know the customers, he don't know nothing.** |
| Confidential Informant: | Yeah. |

5

| | |
|---|---|
| **Montanez:** | **… and it's not like we use the block.** |
| Confidential Informant: | Right, right, right… |
| **Montanez:** | **That shit is you call us and…** |
| Confidential Informant: | Yeah, yeah… |
| **Montanez:** | **… we come to you.** |

(Ex. 1-T at 9-10; 14-15.)

**III.    The Indictment**

On January 11, 2013, a grand jury in this District handed down a two-count indictment

charging the defendant (in one count) with participating in a crack cocaine and marijuana

conspiracy, in violation of 21 U.S.C. § 846.  On July 2, 2013, the defendant pled guilty to Count

One pursuant to a plea agreement with the Government.

**GOVERNMENT'S SENTENCING RECOMMENDATION**

The Government respectfully submits that the defendant's conduct merits a sentence of

imprisonment within the Guidelines range of 97 to 121 months, to be followed by a period of

supervised release.

For years, Montanez was a committed crack cocaine distributor in and around 1360

Plimpton Avenue.  Indeed, as the excerpts from the December 7, 2012 video demonstrate, in

Montanez's eyes, his actions were integral to the conspiracy's ability to operate.  The

Government agrees.  Montanez's work (electing Fernandez as leader, selling the crack cocaine

that Fernandez financed, and using acts of violence to protect Fernandez when needed) illustrates

that he is not a mere street dealer.  He is, instead, a critical component of a large-scale and, until

this Indictment, successful narcotics conspiracy.

In the present case, a sentence within the advisory Guidelines range of 97 to 121 months' imprisonment would be sufficient, but not greater than necessary, to comply with the purposes of sentencing. From a categorical perspective, the Guidelines range that applies in this case reflects the considered judgment of the Sentencing Commission, after examining "tens of thousands of sentences and work[ing] with the help of many others in the law enforcement community over a long period of time" in an effort to fulfill the same objectives set out in Section 3553(a). *Rita*, 551 U.S. 338, 349 (2007).

Moreover, because the Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice," the Guidelines "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.* at 350. Several of those objectives support a Guidelines sentence here; specifically, the need to reflect the seriousness of the offense, to promote a respect for the law, and to provide just punishment for the offense, *see* 18 U.S.C. § 3553(a)(2)(A), the need to afford adequate deterrence to criminal conduct, *see* 18 U.S.C. § 3553(a)(2)(B), and the need to protect the public from further crimes of the defendant, *see* 18 U.S.C. § 3553(a)(2)(C).

The seriousness of the crime for which the defendant was convicted is beyond dispute. As the Court well knows, Montanez and his co-conspirators displaced the everyday people at 1360 Plimpton Avenue whose lobby, hallways, and playground were commandeered by the conspiracy and used for drug distribution. These actions, which stretched over a decade, merit serious punishment, both to deter the general public (including those in and around 1360 Plimpton Avenue who may seek to fill the conspiracy's void) and to deter the defendant from potentially returning to narcotics distribution.

In sum, while the Government hopes this conviction represents the end of the defendant's criminal behavior, a significant sentence of imprisonment is justified. Accordingly, the

7

Government asks the Court to impose a sentence between 97 and 121 months' imprisonment

followed by a significant term of supervised release.

## CONCLUSION

For the foregoing reasons, a sentence within the Guidelines range of 97 to 121 months'

imprisonment would achieve the legitimate purposes of sentencing.

Dated: New York, New York
       December 12, 2013

Respectfully submitted,

PREET BHARARA
United States Attorney

By:      _____

Damian Williams / Brooke E. Cucinella
Assistant United States Attorneys
Southern District of New York
(212) 637-2298 / 2477

8

1

Dcj1mons

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4           v.                              13-CR-20 (PAE)

5    DANIEL MONTANEZ,

6                   Defendant.             Sentencing

7    ------------------------------x

8                                          New York, N.Y.
                                           December 19, 2013
9                                          10:15 a.m.

10

     Before:
11
                        HON. PAUL A. ENGELMAYER,
12
                                           District Judge
13

14                         APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  A. DAMIAN WILLIAMS, ESQ.
17        Assistant United States Attorney

18   GERALD J. DI CHIARA, ESQ.
          Attorney for Defendant
19

20

21

22

23

24

25

              SOUTHERN DISTRICT REPORTERS, P.C.
                     (212) 805-0300

Dcj1mons

```
 1              (In open court; case called)
 2         MR. WILLIAMS:  Good morning, your Honor.  Damian
 3    Williams for the government.
 4         THE COURT:  Good morning, Mr. Williams.
 5         MR. DI CHIARA:  Gerald Di Chiara for Mr. Montanez.  I
 6    will point out, your Honor, that defendant's partner is in
 7    court, Ms. Diaz, and his family is in the building.
 8    Unfortunately they were waiting for someone, but given the fact
 9    that it's 15 minutes past the scheduled time, we will not delay
10    the court.
11         THE COURT:  All right.  Thank you.  I appreciate it.
12    And I'll take note of the fact that they are en route here.
13         MR. DI CHIARA:  Thank you.
14         THE COURT:  Anyway, good morning to you,
15    Mr. Di Chiara, and good morning to you, Mr. Montanez.
16         THE DEFENDANT:  Good morning.
17         THE COURT:  Do you need an interpreter, Mr. Di Chiara?
18         MR. DI CHIARA:  No, your Honor.
19         THE COURT:  We're here to impose sentence in United
20    States v. Daniel Montanez.  On July 2nd, 2013, Mr. Montanez
21    pled guilty to conspiracy to distribute and possess with intent
22    to distribute crack cocaine.
23              In preparation for today's proceeding, I've reviewed
24    the plea agreement and the transcript of the plea proceedings.
25    I've also reviewed the presentence report, which is dated
```

**A85**

3

Dcj1mons

1   December 12th, 2013, including the recommendation and

2   addendum to that report.  I've also reviewed the following

3   additional submissions: the defendant's sentencing submission

4   dated December 3, 2013; the government's sentencing submission

5   dated December 12, 2013; and the defendant's letter of

6   yesterday, December 18th, attaching certain certificates

7   earned by the defendant while incarcerated.  Have the parties

8   received each of these submissions?

9            MR. WILLIAMS:  Yes, your Honor.

10           MR. DI CHIARA:  Yes, your Honor.

11           THE COURT:  Have any other submissions been made in

12  connection with sentencing?

13           MR. WILLIAMS:  No, your Honor.

14           MR. DI CHIARA:  No, your Honor.

15           THE COURT:  Okay.  As counsel are aware, I have also

16  presided over the trial of Angelo Fernandez in late August.

17  The testimony and the videotape evidence, including of various

18  drug sales by Mr. Fernandez's distributors, such as

19  Mr. Montanez, gave me important context in which to understand

20  the offense here.  Of particular relevance to me, I developed a

21  better understanding of the locations in which the sales were

22  made, including in the vicinity of the playground that is just

23  outside of 1360 Plimpton Avenue.  I also learned of the use of

24  threats and intimidation by Mr. Fernandez to deter other

25  people, including two superintendents, one building manager,

Dcj1mons

1   and a tenant, from interfering with his drug selling.  I do not

2   believe that the trial evidence gave me a factual basis on

3   which to conclude that Mr. Montanez was personally present for

4   any of those four episodes, but before moving any further,

5   Mr. Williams, is that correct?

6          MR. WILLIAMS:  Yes, your Honor, it is.

7          THE COURT:  Okay.  So Mr. Di Chiara, just so you know,

8   in thinking about the appropriate facts that I can consider

9   today, I will be taking into account the fact that there was

10  drug selling in and around the playground and an apartment

11  building.  I take it that's not disputed?

12         MR. DI CHIARA:  That's not disputed, your Honor, but I

13  would remind the court -- and I assume that came out at the

14  trial -- with regard to the crack sales that my client made,

15  they were done not -- he wasn't standing in the street selling

16  drugs.  What happened was, he would get a phone call from a

17  customer that he had and so -- and he would meet that customer

18  with the drugs.  It wasn't as if he was out there and kids

19  could come up and buy drugs.  It was prearranged drug sales to

20  customers.

21         THE COURT:  Okay.  That's helpful.  I was focusing

22  more on the locations, but I take the nuance as consistent with

23  my recollection of the evidence.

24         MR. DI CHIARA:  Thank you.

25         THE COURT:  The other thing that I do intend to take

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcj1mons

1    note of is that Mr. Fernandez, in any event, used threats of

2    violence to protect his business.  I take it, Mr. Di Chiara,

3    that is not disputed.

4              MR. DI CHIARA:  That's not disputed.

5              THE COURT:  All right.  Mr. Di Chiara, have you read

6    the presentence report?

7              MR. DI CHIARA:  I have, your Honor.

8              THE COURT:  Have you discussed it with your client?

9              MR. DI CHIARA:  We have, your Honor.

10             THE COURT:  Mr. Montanez, have you read the

11    presentence report?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  Have you discussed it with Mr. Di Chiara?

14             THE DEFENDANT:  Yes, your Honor.

15             THE COURT:  Have you had the opportunity to go over

16    with Mr. Di Chiara any errors in the report or anything else

17    that should be taken up with the court?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Mr. Williams, how about you?  Have you

20    reviewed the presentence report?

21             MR. WILLIAMS:  Yes, I have.

22             THE COURT:  Let's first turn to factual accuracy.  Are

23    there any objections to the report regarding its factual

24    accuracy?  Mr. Di Chiara, I'll start with you, because it looks

25    as if two background changes were sought by you to be made on

Dcj1mons

1   page 2 of your sentencing letter.  One of them is directed to

2   paragraph 37 of the presentence report.  Is that a change

3   you're still asking to be made?

4         MR. DI CHIARA:  It is, your Honor, but in the new

5   sentencing memorandum from probation that we got with regard --

6   and their recommendation, containing their recommendation, that

7   paragraph 37 has now become paragraph 43 and paragraph 49 has

8   now become paragraph 52.

9         THE COURT:  All right.  So let's look at old paragraph

10   37 that is now new paragraph 43.  You want to add that these

11   charges were dismissed, correct?

12         MR. DI CHIARA:  Yes.  I submitted a copy of a letter

13   from the attorney that represented him at that time indicating

14   to the family that that charge was dismissed.

15         THE COURT:  Okay.  Mr. Williams?

16         MR. WILLIAMS:  I have no objection.

17         THE COURT:  All right.  Then I will treat paragraph 43

18   as adding the additional fact that those charges were

19   dismissed.

20         You said a moment ago that paragraph 49 has now been

21   renumbered?  What number is it?

22         MR. DI CHIARA:  It is now 52.

23         THE COURT:  Okay.  Paragraph 52 you want to be amended

24   to reflect that when Mr. Montanez's daughter was born, she had

25   a twin named Jeannie, who died during childbirth, and that

Dcj1mons

1   Mr. Montanez carries a tattoo of I gather the name Jeannie on

2   his left forearm?

3         MR. DI CHIARA:  That's correct, your Honor, but more

4   importantly, the way it reads now, it says -- it's as if there

5   was a separate miscarriage.

6         THE COURT:  I see.  In other words, it's one act of

7   labor.

8         MR. DI CHIARA:  It was one act of labor and there were

9   two children.  One unfortunately was born in stillbirth.

10        THE COURT:  Yes.  And that is sad, and Mr. Montanez,

11   although the sentencing is not about that incident, you do have

12   my sympathies for that.

13        Very well.  Mr. Williams, any objection to my making

14   that change?

15        MR. WILLIAMS:  Of course not, your Honor.

16        THE COURT:  I'll make that change as well in

17   paragraph 52.

18        With those changes, then, Mr. Di Chiara, do you have

19   any objections to the presentence report of a factual nature?

20        MR. DI CHIARA:  No, your Honor.

21        THE COURT:  Mr. Williams, how about you?

22        MR. WILLIAMS:  No objections.

23        THE COURT:  Hearing no objections save the ones that I

24   have responded to and modified the PSR to reflect, I will adopt

25   the factual recitations set forth in the PSR.  The presentence

Dcj1mons

1   report will be made a part of the record in this matter.  It

2   will be placed under seal.  In the event an appeal is taken,

3   counsel on appeal may have access to the sealed report without

4   further application to this court.

5        Is there any reason why the parties' sentencing

6   submissions should not be publicly filed?

7        MR. WILLIAMS:  No, your Honor.

8        MR. DI CHIARA:  No, your Honor.

9        THE COURT:  I'd ask you each to please do so.

10       All right.  The next issue I need to turn to involves

11   the Sentencing Guidelines calculation.  The court, of course,

12   is no longer required to follow the Sentencing Guidelines.

13   However, the court is required to consider the applicable

14   guidelines in imposing sentence.  To do so, it's necessary that

15   the court accurately calculate the guideline range.

16       And I'll just note for the record that over the last

17   half minute or so, a number of people who I gather are members

18   of the defendant's family or friends have come here, and I

19   welcome you all to the courtroom.

20       In this case, coming back to the guidelines, there was

21   a plea agreement in which the parties stipulated to a

22   particular calculation of how the Sentencing Guidelines apply

23   to Mr. Montanez's case.  Am I correct that the calculation in

24   the presentence report is in accord with the parties'

25   agreement?

Dcj1mons

1         MR. WILLIAMS:  Yes, your Honor, it is.

2         MR. DI CHIARA:  Yes, your Honor.

3         THE COURT:  Okay.  Based on the parties' agreement,

4    based on the absence of objection, based on my own independent

5    evaluation of how the guidelines apply, I accept the guideline

6    calculation in the presentence report.  I find that the offense

7    level is 29, the criminal history category is II, and the

8    guideline range is 97 to 121 months' imprisonment, with a

9    mandatory minimum sentence of 60 months.

10        The next subject I need to briefly cover involves

11   departures, which is to say within the Sentencing Guidelines

12   framework, in the plea agreement, both parties agree that

13   neither an upward nor a downward departure within the

14   guidelines framework is merited.  Having reviewed the

15   presentence report and the parties' submissions, I share that

16   conclusion.  I find as a matter of law that no departure is

17   available.  That's obviously different from the issue of

18   whether the broader Section 3553(a) factors counsel a sentence

19   above or below the stipulated guideline range.

20        Does the government wish to be heard with respect to

21   sentencing?

22        MR. WILLIAMS:  Your Honor, we're prepared to rest on

23   our submission.  I would just briefly add that your Honor's

24   presiding over the trial in August certainly expanded the

25   court's awareness of the details of this conspiracy and in

Dcj1mons

1    particular the video that Mr. Montanez featured in, which

2    explained the background of the conspiracy, I believe amplified

3    the government's understanding and the court's understanding of

4    the role that he played in particular, which of course is a

5    serious one.  And to the extent the locations are significant,

6    the delivery operation and the delivery of crack cocaine in and

7    around 1360 Plimpton Avenue emanated from the building and the

8    playground and went all around to that area, so it's still a

9    serious offense, regardless of whether it was stationary or

10   not.

11         THE COURT:  Let me ask you this.  Mr. Williams is

12   aware of this; I'm not sure, Mr. Di Chiara, whether you are.

13   Yesterday I sentenced Jeffrey Minaya.  Mr. Minaya's guideline

14   range was one level below that of Mr. Montanez, I think because

15   of a difference in criminal history.  His guideline was 87 to

16   108 months, and I imposed a sentence of 96 months.

17   Mr. Williams, I'd be curious as to your thoughts on how the two

18   compare.  I ask you that because, you know, under Section

19   3553(a), particularly where there's common criminal activity,

20   it's especially important that I look laterally at

21   co-defendants to make sure that they are sentenced justly in

22   relation to each other.  On the face of it, Mr. Montanez has a

23   higher criminal history.  On the other hand, Mr. Minaya was

24   involved personally in a particularly horrifying threat made to

25   the superintendent.  Those would appear to be the two most

Dcj1mons

1 | significant factors, one pointing in each direction to

2 | distinguish the two of them. Do you have a view, all in, as to

3 | the relative culpability of the two men?

4 | MR. WILLIAMS: Your Honor, the government's view

5 | overall is that they are more or less equally culpable. They

6 | were both prime movers of the crack cocaine within the

7 | business. Mr. Montanez had quite an extensive exposure to

8 | Mr. Fernandez and, as he explained in the video, helped make

9 | him the boss and worked with him for over eight -- for a number

10 | of years and was quite close to him.

11 | Now I know Mr. Minaya had the instance of the threat,

12 | which obviously factored into the court's decision.

13 | Mr. Montanez, while he has participated in crimes of violence,

14 | not related directly to the conspiracy, his criminal history,

15 | though, does demonstrate there are acts of violence in his

16 | past, so as a whole -- and crimes of violence in and around

17 | 1360 Plimpton Avenue. As a whole, we view both Mr. Minaya and

18 | Mr. Montanez as more or less twin defendants, even though

19 | internally, when you're conducting the potential sentencing

20 | calculation, the factors might be different.

21 | THE COURT: Okay. Thank you. That's very helpful.

22 | As I asked you yesterday, is the government seeking

23 | forfeiture here?

24 | MR. WILLIAMS: No, your Honor, we're not.

25 | THE COURT: Restitution?

Dcj1mons

1          MR. WILLIAMS:  No, your Honor.

2          THE COURT:  Very good.  Does defense counsel wish to

3    be heard?

4          MR. DI CHIARA:  Yes, your Honor.  Pursuant to the plea

5    agreement, we're requesting a 97-month sentence from your

6    Honor.  Your Honor, 97 months is a significant sentence.  It's

7    also a sentence probation feels is significant enough for the

8    purposes of sentencing, which is -- probably the most used

9    quote in every sentencing submission -- which is sufficient but

10   not greater than necessary.

11         Mr. Montanez -- after reading the government's

12   submission, I thought about it and I realized that Mr. Montanez

13   is not unlike many young men who are similarly situated to him,

14   when they grow up in the streets, which is what he did, and

15   he -- and the street becomes your family instead of your family

16   being your family.  Fortunately, in the last 11 months that

17   he's been incarcerated, he has reconnected with his real

18   family, and I think that's a significant break in a cycle that

19   dates back -- I mean, the concept of being a part of the

20   street, young people, I mean, West Side Story, the Capulets,

21   the Montagues, they all had these things where they are out

22   there to defend each other, and the youth culture and the

23   street culture, that has to be broken.

24         And I think in Mr. Montanez's case, I've seen a

25   metamorphosis in the young man.  I see a person that now is

Dcj1mons

1   very, very dedicated to doing exactly what probation has

2   recommended, which is further his education.  He has been

3   trying to get his GED while he is in the MCC, and I think that

4   that's very important.  And he has e-mails too -- which I

5   didn't attach because I only got it this morning, but -- to the

6   counselor saying that he knows he failed the GED portion but he

7   wants to retake it, and he's on a waiting list.

8            The same thing with the drug program.  Because there

9   were separations -- he actually has strived for that the entire

10  time he's been at MCC, he tried to get into drug programs.

11  Because there were separations, they wouldn't allow him.  The

12  separations have since ended, but he's on a waiting list to get

13  into the drug program.  Hopefully the court will entertain the

14  RDAP program which probation has recommended, which I find --

15  the Bureau of Prisons finds so helpful in the rehabilitation of

16  drug users, dealers like Mr. Montanez that they actually give

17  them a little break on their time if they successfully complete

18  it, but it's still a voluntary program, and from what I

19  understand, not everyone goes into it because it's a tough

20  program.  But it's a program that's worthwhile and a program

21  that apparently has had success.

22            Breaking that cycle is the most important thing, your

23  Honor.

24            He's reconnected with his family.  I don't want to be

25  repetitious, but he is doing what he can, as evidenced by the

Dcj1mons

1    certificates that I just received from him two days ago, so

2    that's why they went to your Honor yesterday.

3            THE COURT:  And I appreciated your sending them to me.

4            MR. DI CHIARA:  I know that you like to get things two

5    weeks in advance, but I can't do more than what I can do.

6            THE COURT:  Not a problem.

7            MR. DI CHIARA:  And he's recently learned -- and it's

8    a cross that he has to bear.  He's had some sorrow in his life,

9    as you know from the child, but he just recently learned that

10   his mother has cancer and she's suffering from that too.

11           THE COURT:  I'm sorry to hear that, Mr. Montanez.

12           MR. DI CHIARA:  She's present in the courtroom, as is

13   his father, his stepfather, his mother, cousins, sisters, and

14   of course his partner in life.  They're all here.

15           Based upon all of those things, I'd ask the court to

16   give Mr. Montanez any consideration it can.

17           THE COURT:  Thank you, Mr. Di Chiara.

18           Mr. Montanez, do you wish to make a statement?

19           THE DEFENDANT:  I would like --

20           THE COURT:  Take your time.

21           THE DEFENDANT:  First and foremost, I would like to

22   forgive my -- ask for forgiveness from my family.  I'm sorry

23   for embarrassing them, putting them through the pain and

24   suffering that they have.

25           I do accept my responsibility for actions that I took

**A97**

15

```
Dcj1mons
```

1    and know that it was wrong and somewhat thank the government

2    for putting me in because I realize that what I was doing was a

3    harm, not only to my community but to myself, to my family, and

4    it has taught me a lot.  And I only ask for as well as the

5    courts and your Honor to not have -- to forgive me, you know,

6    just have a little remorse for me and for my family; more than

7    for me, for my family.  That's all I have to ask, your Honor.

8    And I'm sorry.

9            THE COURT:  Thank you, Mr. Montanez.

10           Counsel, I'm just going to take a moment and collect

11   my thoughts.

12           (Pause)

13           THE COURT:  Is there any reason why sentence should

14   not now be imposed?

15           MR. WILLIAMS:  No, your Honor.

16           MR. DI CHIARA:  No, your Honor.

17           THE COURT:  As I've stated, and as counsel have

18   agreed, the guideline range that applies to this case is 97 to

19   121 months' imprisonment.

20           Under the Supreme Court's decision in *Booker* and the

21   cases that have followed it, the guideline range is only one

22   factor that the court must consider in deciding the appropriate

23   sentence in each case.  The court is also required to consider

24   the other factors set forth in Title 18 United States Code

25   Section 3553(a).  These include the nature and circumstances of

Dcj1mons

1 the offense and the history and characteristics of the

2 defendant, the need for the sentence imposed to reflect the

3 seriousness of the offense, to promote respect for the law, and

4 to provide just punishment for the offense, the need for the

5 sentence imposed to afford adequate deterrence to criminal

6 conduct, the need for the sentence imposed to protect the

7 public from further crimes of the defendant, and the need for

8 the sentence imposed to provide the defendant with needed

9 educational or vocational training, medical care, or other

10 correctional treatment in the most effective manner.

11     It's very important that the court avoid unwarranted

12 sentencing disparities among defendants with similar records

13 who have been found guilty of similar conduct.  That command is

14 particularly relevant in a multidefendant case like this where

15 the court is responsible for making sure that the overall

16 pattern of sentences that are imposed are logically consistent

17 with one another.

18     The court is also required to impose a sentence

19 sufficient but no greater than necessary to comply with the

20 purposes set out above.  I find that the sentence that I'm

21 about to pronounce is sufficient but not greater than necessary

22 to satisfy the purposes of sentencing that I just mentioned.

23     Mr. Montanez, I've given a lot of thought and

24 attention to the appropriate sentence in your case, in light of

25 the Section 3553(a) factors, the purposes of sentencing.  These

Dcj1mons

1   are my thoughts.

2          To begin with, this is a very serious offense.  You

3   have pled guilty to conspiracy to distribute crack.  The record

4   also reflects that you sold marijuana.  The crack aspect is, of

5   course, particularly serious, and I'm going to focus my remarks

6   on that.

7          According to the plea agreement, you conspired to

8   distribute between 280 and 840 grams of crack cocaine.  That is

9   a formidable quantity.  It is consistent with hundreds,

10  probably many hundreds of sales of crack to customers.  Having

11  presided over the trial of Angelo Fernandez, there was

12  testimony that there were dozens upon dozens of customers

13  lining up to buy crack and marijuana from the people who sold

14  those drugs on Mr. Fernandez's behalf.  The quantities you sold

15  are consistent with your selling crack to lots and lots of

16  people.  In my view each of those people is properly viewed not

17  just as a customer but as a victim of yours.

18         The 3553(a) factor of just punishment and imposing a

19  sentence that reflects the seriousness of the crime points

20  towards a long sentence consistent with the guideline range

21  that the parties agree applies.  Crack dealing is an enormously

22  destructive act.  I know you know that.  Crack is incredibly

23  addictive.  Dealing crack breeds addiction, it breeds violence,

24  it destroys families, it destroys lives, it destroys

25  communities, it destroys children.  You sold crack for a long

Dcj1mons

1   time to a lot of people.  The fact that you were a crack dealer

2   for the period of quite a few years aggravates the seriousness

3   of your crime.  This was not a limited or one-shot occurrence.

4   By all indications, for at least some period of time it was

5   your job; it was your way of life.

6          Worse, in this case you and your co-conspirators sold

7   crack and marijuana in and around a playground and in and

8   around a residential apartment building.  That can be seen on

9   the various surveillance videos taken in this case, which I saw

10  during the Fernandez trial, which depict you and others selling

11  drugs in those locations.  By selling crack and marijuana where

12  children played and where people lived, you corrupted places

13  that for innocent people should have been sanctuaries.  We will

14  never know how being privy to your and your co-conspirators'

15  persistent drug dealing may have damaged the lives of the

16  children whom you sold near.  But we do know that your conduct

17  exposed them to destructive adult patterns of behavior long

18  before they were ready.  That enhances the seriousness of your

19  crime.

20         For similar reasons, the interest in general

21  deterrence -- in other words, deterring other people from

22  committing similar crimes -- also warrants a significant

23  sentence.  Simply put, it's important that the word go out to

24  people who would consider distributing crack, especially in the

25  presence of children, that if they get caught, they will do

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Dcj1mons

1   long, long time in jail.

2          I'm also mindful that the conspiracy that you were a

3   part of used threats of violence to maintain control of its

4   block and particularly the building at 1360 Plimpton Avenue.

5   There was testimony at the Fernandez trial about threats by

6   Mr. Fernandez to intimidate a tenant, two building

7   superintendents, and a building manager so as to leave

8   Mr. Fernandez's drug operations alone.  One of the

9   superintendents had Mr. Fernandez and Mr. Minaya threaten the

10  lives of him and his children.

11         I fully understand that Mr. Fernandez was in charge

12  here.  He called the shots.  He was the main person who used

13  threats and intimidation.  The day when he will be held to

14  account for his conduct is coming.  I also realize that you did

15  not personally participate in these threats or, a little more

16  precisely, I have not been presented with proof that you did.

17  It was Mr. Minaya, for example, who accompanied Mr. Fernandez

18  when he threatened the life of the superintendent and his

19  family.  But at a more general level you and the other

20  co-conspirators had to be aware of Mr. Fernandez's propensity

21  for violence or violent threats.  You were on notice that he

22  used such threats to get his way and protect his turf.  I note

23  that on the tape of your lengthy conversation with a

24  confidential informant, which played an important role in the

25  Fernandez trial, you state that you and Mr. Fernandez, whom you

Dcj1mons

1  referred to as Scarface, had been involved in the drug business

2  together for a long time.  You go on to say, about Scarface, "I

3  cut some guy for him.  I cut the guy."  Your willingness to

4  participate in the drug conspiracy that used threats of

5  retaliation and violence to protect Mr. Fernandez's

6  crack-dealing business is an aggravating factor here.  My

7  sentence needs to and will take account of that fact.

8      So far I've addressed the factors of just punishment,

9  of promoting respect for the law, and of general deterrence.

10  Let me say a word now about a different Section 3553(a) factor

11  called specific deterrence, and that means sending a message to

12  you personally, Mr. Montanez, that is sufficient enough and

13  loud enough to deter you from committing such crimes again.  In

14  your case it is a significant factor, much as it was for your

15  co-defendant, Alexis Azcona.  He had ten prior arrests, mostly

16  for marijuana possession, and had received sentences on them of

17  little to no jail time.  Those, however, did not deter him from

18  continuing to distribute marijuana.  Under those circumstances

19  I concluded that the interest in specific deterrence was

20  significant.  Much the same is true here in your case.  You

21  have a significant criminal record.  In 2004 you pled guilty to

22  criminal possession of marijuana; in 2007 you pled guilty to

23  criminal sale of marijuana; in 2008 you again pled guilty to

24  criminal sale of marijuana; in 2008 you pled guilty to assault

25  in the second degree, relating to an incident in which you

Dcj1mons

1    fired several shots in the direction of a group of people and

2    shot another person in the thigh; and in 2010 you pled guilty

3    to unlawful possession of marijuana.  Now a number of those

4    offenses, particularly the marijuana offenses, have not been

5    counted towards your criminal history category under the

6    guidelines because they have been treated as part and parcel of

7    the offense to which you pled guilty.  The assault, of course,

8    did count.  But in my thinking about the factor of specific

9    deterrence, all of your prior prosecutions and guilty pleas are

10   relevant.  The record before me reflects that you have served

11   little if any time prior to this case even on the shooting

12   assault, on which, shockingly, I might add, you were sentenced

13   to five years' probation and no jail time.  I don't know what

14   the judges on those cases were thinking.  I have to assume that

15   they thought or at least hoped that your arrest and prosecution

16   in those cases would be a wake-up call for you.  They must have

17   hoped that simply the fact of an arrest and a conviction on

18   those prior crimes would get the message to you that it was

19   time to stop committing crimes, lest you otherwise spend the

20   rest of your life, or much of it, in prison.  Unfortunately the

21   message did not get across to you.  Quite the contrary, on the

22   record before me, it looks like you stepped up your

23   criminality.  You graduated from marijuana to crack and you

24   sold prodigious amounts of crack, and you did it in connection

25   with a drug dealer, Scarface, whom, as you well knew, was

Dcj1mons

1    capable of threatening violence and on whose behalf, by your

2    own words, you cut another person. I have to therefore

3    conclude, reluctantly, that it's time for a much, much louder

4    wake-up call than you've gotten in any of your prior cases.

5    It's time for to you get a wake-up call that you will remember

6    in the way that a person recalls a fire alarm in the middle of

7    the night. The sentence today will be that wake-up call. It's

8    intended to get your attention, Mr. Montanez, and to get the

9    message to you that if you keep committing such crimes, you are

10   headed towards a life in which you spend more time in jail than

11   out of jail.

12         Finally, in considering factors pointing towards a

13   longer sentence, the Section 3553(a) factor of incapacitation.

14   In other words, protection of the public is relevant here. It

15   may well be that the arrest of Angelo Fernandez eliminated your

16   main confederate in selling drugs. It may also be, as you say

17   in your letter to me, that you get it now and you're committed

18   to turning your life around. There are certainly some

19   indications of that. Whether you are truly a changed man is

20   not fully clear to me, and by its predictive nature, it's a

21   question that cannot now be answered with certainty. But as I

22   sit here today, I cannot be certain that Daniel Montanez, if at

23   liberty, would not revert to selling and using drugs or even to

24   using violence. A long prison sentence here serves the goal of

25   protecting the public while you have time to mature. It is my

Dcj1mons

1   hope that when you are released from prison as an older man,

2   you will have gained the maturity and wisdom to lead you to

3   obey the law.

4       Thus far I've identified factors -- and there are a

5   number of them -- that point towards a very long sentence.

6   However, there are factors, a number of them, that point in the

7   other direction, and I want to review them with you now.

8       First of all, you have accepted responsibility for

9   your criminal acts.  That was reflected in your guilty plea.

10  That matters to me.  Had you not pled guilty, it appears that

11  you would have been facing a ten-year mandatory minimum

12  sentence for your crime, and even without that your guideline

13  range would have been at least three levels higher, meaning a

14  sentencing range not of 97 to 121 months but of 135 to 168

15  months.  Had you not pled guilty, all else being equal, I today

16  would be imposing a much longer sentence than the one I'm going

17  to impose in all likelihood consistent with that higher

18  guideline range.

19      In addition, I note that your remarks to me today

20  demonstrate very, very palpable obvious remorse from the

21  emotion in your face.  From your statement to your family about

22  your regret about embarrassing them, it seemed to me that you

23  really meant what you said, and that registered with me.

24      In the same way, same vein, I read your very

25  thoughtful letter to me, and you wrote the following, among

Dcj1mons

1    other things: "I allowed outside influences to lead me into a

2    life of crime, but the choices were mine to make, your Honor,

3    and I take full responsibility for putting myself in the

4    situation I'm in.  I chose to use drugs and not to get a proper

5    education, something I regret dearly."  You go on to say,

6    "Being incarcerated has shown me what is truly important and I

7    shall never take my life or anyone else's life for granted ever

8    again.  I know that selling drugs is wrong, your Honor, but

9    fast money, along with stupidity, had me thinking everything

10   was okay the way I was living.  When I was working as a stock

11   clerk and a butcher, my life is a lot more stable."  I'm only

12   excerpting some of the lines here.  You also go on to say, "I

13   bond my words here, your Honor, that I will never break the law

14   again.  Once again, I am so sorry for all that I have done."

15          I credit what you say.  I credit that you get it and

16   you really regret the crimes you committed.

17          I also want to pause and credit you for the education

18   you have been pursuing while at the MCC, which reflects, by

19   your actions, an attempt to turn your life around.

20          Second, I'm mindful that when you committed this

21   crime, you did so in conjunction with a violent and dangerous

22   man with a strong personality, Angelo Fernandez.  That, of

23   course, doesn't excuse your conduct, and while you began

24   working for him as a younger man, you're now nearly 30.  You

25   will be in March.  And you were around age 29, more or less,

Dcj1mons

1   when you were arrested.  You were plenty old enough to see that

2   what Angelo Fernandez was doing was evil and wrong and you were

3   old enough to withdraw from his business, but that said, I do

4   appreciate that, given his violence, given his demonstrated

5   willingness to threaten retaliation, doing so may not have been

6   easy.  That is relevant to my assessment of your credibility.

7        Third, I am mindful that you have had a hard life.

8   Your father largely abandoned you.  You reported to the

9   probation department that your mother was drunk every night and

10  appears to have largely checked out of your life.  You did not

11  have the advantages that many other young people have, and at

12  least until your stepfather came along, it does not appear that

13  you had a positive strong male role model in your life.  Again,

14  none of that is an excuse for being a crack dealer, but it

15  certainly is a partial explanation and it too bears on the

16  extent of your credibility.  I consider it as such in

17  determining the just sentence here.

18       Finally, under Section 3553(a), I am to consider your

19  history and your characteristics.  As to that, I reviewed with

20  interest the moving letters that I received courtesy of

21  Mr. Di Chiara from your family and friends, and they showed me

22  a different side of you.  I saw a loving son and brother, a

23  devoted father, a man who cares for children, a man capable of

24  hard work.

25       Just a few excerpts.  Excerpting now from the letter

Dcj1mons

1   of your girlfriend, Zahir Diaz, she writes, among other things,

2   "He has the drive to grow and pushes himself to become a better

3   person day by day.  Daniel is a loveable, capable,

4   family-oriented, dedicated, and intelligent man.  Having Daniel

5   in my life has been a blessing because he's an amazing person

6   and has a huge heart."

7          I read the letter of your mother.  Again, just an

8   excerpt.  "As family, we go through our ups and downs and

9   nothing has ever been perfect, but I can say he has always

10  tried to look at the positive in every situation, which I

11  always secretly admired him for and made me so proud.  Daniel's

12  most prized possession is his daughter Janellie (ph).  When the

13  mother of his child would allow Janellie to come over so he can

14  spend time with his daughter, it was the best days of his life.

15  He loves his daughter so much and enjoys every minute with her.

16  He's very loving and caring towards her and his niece and

17  nephews.  The kids are his world.  He's an amazing father to

18  her and worries about his daughter and her well-being."

19         I also read the letter from your sister, Millinet (ph)

20  Montanez.  She writes -- again, an excerpt -- "I always knew

21  that having my brother by my side, I was always going to be

22  okay.  He has always been there showing me support whenever I

23  needed him.  During the toughest times in my life, I can

24  remember my brother being the one to count on.  He was the

25  shoulder I always leaned on to confide in and express my

Dcj1mons

1   emotions to.  I would not trade my brother for anything because

2   he is the ideal person for me.  I call him my twin, although I

3   am younger, because I'm attached to him, and without him I feel

4   incomplete.  Daniel always made me laugh and challenged me with

5   new ideas of how I can push myself to be a better person.  He

6   is the kind of person that makes everything better because his

7   positivity is just so incomparable."

8           I also read with interest the letters of Felicita

9   Polanco, Laliana Rodriguez, Viviana Rodriguez, and Alan Audley.

10   They too were consistent with the themes of the letters that I

11   have quoted.

12           In the end, Mr. Montanez, my judgment, consistent with

13   the parties' plea agreement, is that a sentence within the

14   guideline range but at the bottom of the guideline range, as

15   your counsel has recommended, is necessary here.  My judgment

16   is that any lesser sentence would not be enough to take

17   account, full account of the seriousness of your crimes and the

18   need for general and specific deterrence.  Please know -- and

19   I'm saying this also for the benefit of the letter writers who

20   may be here -- that were it not for the positive attributions

21   that I have just listed and the testimonials to you, the

22   sentence I would have imposed would assuredly have been higher.

23           I'm now going to state the specific sentence I intend

24   to impose.  The attorneys will have a final opportunity to make

25   any legal objections before the sentence is finally imposed.

Dcj1mons

1          Mr. Montanez, would you please rise.

2          Mr. Montanez, after assessing the facts of this case

3    and the Section 3553(a) factors, it is the judgment of the

4    court that you are to serve a sentence of 97 months'

5    imprisonment in the custody of the Bureau of Prisons, to be

6    followed by a period of five years' supervised release.

7          I will instruct the Bureau of Prisons to consider your

8    eligibility, as Mr. Di Chiara has suggested, for the

9    residential drug assistance program and, for that matter, for

10   any available educational or vocational programs.

11         As to supervised release, the standard conditions of

12   supervised release shall apply.  In addition, you shall be

13   subject to the following mandatory conditions:

14         You shall not commit another federal, state, or local

15   crime.

16         You shall not illegally possess a controlled

17   substance.

18         You shall not possess a firearm or destructive device.

19         You shall participate in drug testing to determine if

20   you have reverted to the use of drugs or, for that matter,

21   alcohol.

22         You must also meet the following special conditions:

23         You must participate in drug treatment and counseling.

24         You must participate in a program or course of study

25   aimed at improving your educational level and your employment

Dcj1mons

1    skills.

2         And, as in all such cases, you must submit to a search

3    by the probation department of your person, residence, vehicle,

4    or office on the premise that there's reasonable cause to

5    believe that contraband from a crime may be found there.

6         I have the legal authority to impose a fine.  I do not

7    think it is worth it here, although I note that the probation

8    department has recommended it.  It seems to me there's doubt

9    about your ability to pay.  Under the circumstances I'd rather

10   the money be used for your daughter.

11        Restitution is not sought here, nor forfeiture.

12        I am required to impose and I do impose a mandatory

13   special assessment of $100, which shall be due immediately.

14        Does either counsel know of any legal reason why the

15   sentence shall not be imposed as stated?

16        MR. WILLIAMS:  No, your Honor.

17        MR. DI CHIARA:  No, your Honor.  I would also ask that

18   the court recommend that he be housed as close to the

19   metropolitan area as possible to allow visits.

20        THE COURT:  Yes.  I'll be glad to recommend that he be

21   assigned to a facility as close as possible to the New York

22   City area.

23        The sentence as stated is imposed.

24        Are there any open counts?

25        MR. WILLIAMS:  No, there are not, your Honor.

Dcj1mons

1          THE COURT:  Mr. Montanez, to the extent you haven't

2     given up your right to appeal your conviction and sentence as a

3     result of your guilty plea and the plea agreement you entered

4     into in connection with your guilty plea, I advise you that you

5     have the right to appeal your conviction and your sentence.  If

6     you're unable to pay for the cost of an appeal, you may apply

7     for leave to appeal *in forma pauperis*.  The notice of appeal

8     must be filed within 14 days of the judgment of conviction.

9          Anything further from the government?

10          MR. WILLIAMS:  No, your Honor.

11          THE COURT:  Anything further from the defense?

12          MR. DI CHIARA:  No, your Honor.  Thank you.

13          THE COURT:  Let me ask you to both be seated.

14     Mr. Montanez, please be seated.  Let me just say a word to you.

15          The letters that were written on your behalf were

16     genuinely moving, and there are actions on your behalf,

17     including the courses you're taking at the MCC, that give me

18     some confidence that you get it now.  Certainly your statement

19     suggested to me that, in other words, you're better than the

20     crime you committed.  I have some confidence that if you apply

21     yourself and focus on the important things in life that you

22     address in your letter, when you come out of jail, although the

23     road ahead will be hard, you'll be able to make a good and

24     law-abiding life for yourself.  I do have that confidence.

25     Those letters don't get written about somebody who doesn't have

Dcj1mons

1    the moral compass and doesn't have the wherewithal to steer

2    himself in the right direction.

3          Ladies and gentlemen, I wanted to acknowledge your

4    presence here today and particularly call out the people here

5    who wrote letters on Mr. Montanez's behalf.  I can only imagine

6    how hard this day is.  On the other hand, what you did in

7    writing for him, those of you who wrote letters, gave me more

8    of a texture, more of an ability to understand who Daniel

9    Montanez is.  As you could tell, some of the positive

10   attributes about him were things that mattered to me and,

11   frankly, kept the sentence from going any higher.

12         I'm also impressed that you're here today on such a

13   hard day to be by his side.  That gives me some confidence that

14   when he is prepared to be released from prison and when he has

15   the real challenge of integrating into society, this time in a

16   completely law-abiding way, he's going to have a large pool of

17   people who will be there as a support system for him.  So I

18   want to thank and commend you for being here on this hard day.

19   I wish you well.

20         We stand adjourned.

21         THE CLERK:  All rise.

22                         o0o

23

24

25

**A114**

Case 1:13-cr-00020-PAE   Document 121   Filed 12/19/13   Page 1 of 6

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

## Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>DANIEL MONTANEZ | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number: 1: 13 Cr. 00020-005(PAE)<br>USM Number: 67908-054<br>Gerald J. Di Chiara, Esq.<br><span style="font-size:small">Defendant's Attorney</span> |

### THE DEFENDANT:

☑ pleaded guilty to count(s)    One

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC §846 & 841(b)<br>(1)(B) | Conspiracy to distribute and possess with intent to<br>distribute crack [lesser included offense] | 1/31/2013 | One |

The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s)                          ☐ is    ☐ are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12|19|13

12/19/2013
<span style="font-size:small">Date of Imposition of Judgment</span>

*Paul A. Engelmayer*
<span style="font-size:small">Signature of Judge</span>

PAUL A. ENGELMAYER, U.S. DISTRICT JUDGE
<span style="font-size:small">Name and Title of Judge</span>

12/19/13
<span style="font-size:small">Date</span>

**A115**

AO 245B    (Rev. 09/11) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:  DANIEL MONTANEZ
CASE NUMBER:  1: 13 Cr. 00020-005(PAE)

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

Ninety-seven (97) months.

☑  The court makes the following recommendations to the Bureau of Prisons:

That the defendant be housed in a facility as near to the New York City metropolitan area to be close to family members. The Court also recommends that while the defendant is incarcerated, he participate in any available educational and vocational training programs, and if eligible, he participate in the Residential Drug Assistance Program (RDAP).

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

☐  at _____  ☐ a.m.  ☐ p.m.  on _____ .

☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐  before 2 p.m. on _____ .

☐  as notified by the United States Marshal.

☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B  (Rev. 09/11) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __6__

DEFENDANT:  DANIEL MONTANEZ
CASE NUMBER:  1: 13 Cr. 00020-005(PAE)

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

Five (5) years.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑ The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑ The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐ The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐ The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;

2) the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4) the defendant shall support his or her dependents and meet other family responsibilities;

5) the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6) the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9) the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

Case 1:13-cr-00020-PAE   Document 121   Filed 12/19/13   Page 4 of 6

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3C — Supervised Release

Judgment—Page    4    of    6

DEFENDANT:  DANIEL MONTANEZ
CASE NUMBER:  1: 13 Cr. 00020-005(PAE)

## SPECIAL CONDITIONS OF SUPERVISION

1.  The defendant will participate in a program approved by the U.S. Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol.  The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the probation officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount to be determined by the probation officer, based on ability to pay or availability of the third-party payment.

2.  The defendant shall participate in a program or course of study aimed at improving educational level or employment skills, for example, obtain a GED, participate in or complete a vocational training program, or participate in a literacy program.

3.  The defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation.  The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

4.  The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

5.  The defendant shall be supervised in the district of his residence.

Case 1:13-cr-00020-PAE   Document 121   Filed 12/19/13   Page 5 of 6

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___5___ of ___6___

DEFENDANT:  DANIEL MONTANEZ
CASE NUMBER:  1: 13 Cr. 00020-005(PAE)

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Fine | Restitution |
|---|---|---|---|
| TOTALS | $ 100.00 | $ 0.00 | $ 0.00 |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| TOTALS | $ _____ 0.00 | $ _____ 0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐  the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case 1:13-cr-00020-PAE   Document 121   Filed 12/19/13   Page 6 of 6

AO 245B   (Rev. 09/11) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___6___ of ___6___

DEFENDANT:  DANIEL MONTANEZ
CASE NUMBER:  1:  13 Cr. 00020-005(PAE)

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $ __100.00__   due immediately, balance due

    ☐   not later than _____ , or
    ☐   in accordance   ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D   ☐   Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

**A120**

Criminal Notice of Appeal - Form A

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 3 0 2013

## NOTICE OF APPEAL

United States District Court

SOUTHERN    District of NEW YORK

Caption:

UNITED STATES
v.

DANIEL MONTANEZ

Docket No. 13 CR 00020-005(PAE)

Paul A. Engelmayer

(District Court Judge)

Notice is hereby given that Daniel Montanez appeals to the United States Court of Appeals for the Second Circuit from the judgment ✔ , other | _____ (specify)

entered in this action on 12/19/13 .
(date)

This appeal concerns: Conviction only |___ Sentence only ✔ | Conviction & Sentence |___ Other |___

Defendant found guilty by plea | ✔ | trial | | N/A | .

Offense occurred after November 1, 1987? Yes | ✔ ! No [    N/A |

Date of sentence: 12/19/13 N/A |___|

Bail/Jail Disposition: Committed | ✔ | Not committed | | N/A |

Appellant is represented by counsel? Yes ✔ | No | If yes, provide the following information:

Defendant's Counsel:    Gerald J. Di Chiara

Counsel's Address:    3 Park Avenue Suite 1501

New York, New York 10016

Counsel's Phone:    (212)679-1958

Assistant U.S. Attorney:    AUSA Brook E. Cucinella/AUSA A. Damian Williams

AUSA's Address:    One Saint Andrews Plaza

New York, New York 10016

AUSA's Phone:    (212)637-2477/(212)637-2290

Signature